IN THE SUPREME COURT OF TENNESSEE
AT NASHVILLE

| | | |
|---|---|---|
| COLEMILL ENTERPRISES, INC., | ) | **FOR PUBLICATION** |
| | ) | Filed: March 30, 1998 |
| Plaintiff/Appellant, | ) | |
| | ) | DAVIDSON CHANCERY |
| v. | ) | # 94-3217-I |
| | ) | |
| | ) | Hon. Irvin H. Kilcrease, Jr., |
| JOE HUDDLESTON, Commissioner | ) | Judge. |
| of Tennessee Department of Revenue, | ) | |
| | ) | NO. 01S01-9706-CH-00143 |
| Defendant/Appellee. | ) | |

For the Plaintiff:

Richard L. Colbert
Cornelius & Collins
Nashville, Tennessee

For the Defendant:

John Knox Walkup
Attorney General and Reporter

Michael E. Moore
Solicitor General

Charles L. Lewis
Deputy Attorney General

Gary N. Meade, Jr.
Assistant Attorney General
Nashville, Tennessee

**FILED**

March 30, 1998

Cecil W. Crowson
Appellate Court Clerk

# O P I N I O N

Reversed and Remanded.                              Drowota, J.

We granted the applications of both Colemill Enterprises, Inc. and the Department of Revenue in this action in which Colemill Enterprises, Inc., pursuant to Tenn. Code Ann. § 67-1-1801, challenges an assessment against it of state and local sales taxes. The assessment was based on transactions whereby Colemill Enterprises, Inc. substantially modified airplanes for out-of-state customers.

For multiple reasons hereinafter described, we conclude that neither of the identified transactions on which the assessment was based is subject to sales taxes on (i) sales of tangible personal property pursuant to Tenn. Code Ann. § 67-6-202 or (ii) the installing of tangible personal property under Tenn. Code Ann. §§ 67-6-102(23)(F)(vi) and 67-6-205. Based on this determination, we find it unnecessary to address the other issues presented in the respective applications. The judgment of the Court of Appeals and that of the trial court are reversed, and the plaintiff's suit challenging the assessment of sales taxes is upheld. The plaintiff is entitled to summary judgment, and to reasonable attorney's fees and expenses of litigation pursuant to Tenn. Code Ann. § 67-1-1803(d).

### BACKGROUND

Colemill Enterprises, Inc., which conducts its business at Cornelia Fort Airpark in Nashville, has challenged an assessment of sales taxes that the Department of Revenue made for the audit period January 1991 through March 1994. The assessment, which was made on July 25, 1994, was for $17,122 in sales taxes, which amount included local option taxes. The assessment additionally included interest that had accrued through the date of the assessment.

Ernest W. Colbert, who is the President of Colemill Enterprises, Inc., submitted an affidavit accompanying the plaintiff's motion for summary judgment. The statements

2

contained in that affidavit are uncontroverted for the most part, except inasmuch as they

include the characterization of Colemill Enterprises, Inc.'s activities as "manufacturing."

The Department of Revenue contends that the taxpayer's activities in question did not

constitute "manufacturing." As explained later in this opinion, a determination whether the

taxpayer was engaged in manufacturing is not necessary for our disposition of this case.

The facts as set forth in Mr. Colbert's affidavit included the following:

"2. The July 25, 1994, sales tax assessment in the amount of $20, 714, challenged in this action, is an assessment for taxes on work which Colemill is engaged which is commonly referred to as the aircraft 'conversion' business. A portion of the assessment includes sales tax amounts for 'conversions' produced or manufactured by Colemill for export out of the state of Tennessee. The assessment also includes amounts for a 'conversion' sold to an out-of-state customer exempt from sales tax in its home state, as well as amounts allegedly owed on a 'conversion' sale to an out-of-state customer acquiring it under a blanket certificate of resale. Finally, the assessment includes local option sales tax under Tenn. Code Ann. § § 67-6-701 et. seq. on articles of tangible personal property produced or manufactured by Colemill in this state for export and on separate components of 'conversions' manufactured and sold by Colemill. It is in these respects that the assessment has been challenged by Colemill in this action.

3. Aircraft are manufactured under 'type certificates' issued by the Federal Aviation Administration under 14 C.F.R. Section 2141. The Federal Aviation Administration also issues 'supplemental type certificates' under 14 C.F.R. Sections 21.111 et. seq., under which the holder of the 'supplemental type certificates' is authorized to alter the aircraft covered by the certificates by introducing a major change in the type of design. A 'supplemental type certificate' consists of the approval by the Federal Aviation Administration of a change in the type design of the aircraft together with the type certificate previously issued for aircraft. 14 C.F.R. Section 21.117. The holder of a 'supplemental type certificate' for aircraft is authorized to obtain new airworthiness certificates for the aircraft produced or manufactured under the certificate.

4. For its aircraft 'conversions,' Colemill introduces major changes in the aircraft that include changes in engine, propellers, wings and other fundamental parts of the aircraft. These major changes alter the essential characteristics of the aircraft, so that the aircraft after 'conversion' leaves

Colemill's facility with a new type designation, new performance characteristics, a new Pilot's Operating Hankbook and a new Federal Aviation Administration Approved Flight Manual Supplement. These major changes are performed strictly in accordance with supplemental type certificates issues to Colemill by the Federal Aviation Administration for the particular aircraft 'conversions' 'Colemill is thereby authorized to manufacture . . .

5. The work performed by Colemill under the supplemental type certificates issued to it by the Federal Aviation Administration is not repair work. The work does not involve correcting any problem, defect or malfunction. The work is not necessary to preserve or restore the aircraft to its original condition. In fact, the condition of the aircraft after the work is performed is substantially different from the aircraft's original condition, such that the aircraft leaves the facility with a new type designation and new performance characteristics. The work is not performed to correct disrepair by wear, use, wastage, injury, decay, destruction, or dilapidation. The purpose of the work is to change entirely and dramatically improve the performance and safety characteristics of aircraft, not to repair any part of the aircraft. In many instances, the work performed by Colemill under its supplemental type certificate is more expensive than the air frame upon which the work is performed.

. . .

7. Colemill does not make separate charges to its customers for installation services when a 'conversion' is manufactured. Instead, Colemill charges a single price for the 'conversion,' which includes all of the ingredients that go into the manufacture of the finished product. The 'conversion' Colemill is authorized by law to perform under the supplemental type certificates issued by the Federal Aviation Administration is a finished product. Colemill's supplemental type certificates authorize it to perform all of the work that comprises that finished product, and do not authorize it to mix and match separate components in whatever fashion it sees fit.

8. Attached as Exhibit 3 hereto is a copy of a 'blanket certificate of resale' evidencing the purchase of a conversion for resale by Bessemer Plywood Corporation, an out-of-state purchaser, for which sales tax has been included in the assessment issued by the Tennessee Department of Revenue that is at issue in this case. Also attached as Exhibit 4 is a purchase order for a conversion purchase issued to Colemill by Filtrex, Inc., a New Jersey corporation exempt from sales tax in the state of New Jersey. Sales tax for this conversion purchased by a tax-exempt organization is also included in the assessment that is at issue in this case."

4

The "blanket certificate of resale" that was attached to Mr. Colbert's affidavit was issued by Bessemer Plywood Corporation. It indicates, "the merchandise purchased (from Colemill Enterprises, Inc.) . . . . is purchased for . . . a component part of an article to be produced for sale by manufacturing, assembling, processing, or refining."

The purchase order from Filtrex, Inc. that was attached to Mr. Colbert's affidavit indicates that Filtrex, Inc. is a tax exempt organization. This purchase order also states that the delivery to Filtrex, Inc. by Colemill Enterprises, Inc. was "F.O.B. Destination" in Wayne, New Jersey.

From the Department of Revenue's answer to the taxpayer's application for permission to appeal, it appears that the only transactions at issue in the challenged assessment were the conversion work performed by the taxpayer for Bessemer Plywood Corporation, which involved a purchase for resale, and the conversion work performed for Filtrex, Inc., which was a sale to a tax exempt organization and with respect to which title to tangible personal property was transferred by the taxpayer outside the State of Tennessee.

Both parties moved for summary judgment. The trial court granted the summary judgment motion of the Department of Revenue and denied that of the taxpayer. In addition to ruling in favor of the Department of Revenue on all substantive issues presented, the trial court ruled that the Department is entitled to an award of reasonable attorney's fees and litigation expenses under Tenn. Code Ann. § 67-1-1803(d).

Colemill Enterprises, Inc. appealed the trial court's decision to the Court of Appeals. The Court of Appeals agreed with the trial court on all of the substantive issues presented, including the determination that the transactions at issue were subject to sales

5

taxes on "installation services" under Tenn. Code Ann. § 67-6-102(23)(F)(vi). The Court of Appeals, however, ruled that, "this is a not a proper case for the award of (attorney's fees and litigation expenses)."

As indicated, both parties filed applications for permission to appeal, and this Court granted both applications.

## ANALYSIS

The list of the types of transactions that are taxable under the Retailers' Sales Tax Act, Tenn. Code Ann. § § 67-6-101, et. seq., is contained in Tenn. Code Ann. § 67-6-201. That statute includes the following:

> It is declared to be the legislative intent that every person is exercising a taxable privilege who:
>
> > (1) Engages in the business of selling tangible personal property at retail in this state;
> >
> > . . .
> >
> > (4) Rents or furnishes any of the things or services taxable under this chapter.

The section of the Retailers' Sales Tax Act that imposes sales taxes on sales of tangible personal property is §67-6-202. That statute includes the following:

> (a) For the exercise of the privilege of engaging in the business of selling tangible personal property at retail in this state, a tax is levied at the rate of six percent (6%) of the sales price of each item or article of tangible personal property when sold at retail in this state; . . . (emphasis added).

Services are taxable under Tenn. Code Ann. § 67-6-205, which includes the

6

following:

> (a) There is levied a tax at the rate of six percent (6%) of the gross charge for all services taxable under this chapter.

The list of the kinds of services that are taxable under the Retailers' Sales Tax Act is contained in Tenn. Code Ann. § 67-6-102(23)(F). That statute includes the following:

> (F) "Retail sale," "sale at retail" and "retail sales price" include the following services:
>
> . . .
>
> > (vi) The installing of tangible personal property which remains tangible personal property after installation <u>where a charge is made for such installation</u> whether or not such installation is made as an incident to the sale thereof and whether or not any tangible personal property is transferred in conjunction with such installation service. (emphasis added).

The definitional provision contained in Tenn. Code Ann. § 67-6-102(23)(A) sets forth an exception to the imposition of sales taxes on services, as well as an exception to the imposition of sales taxes on sales of tangible personal property. That definitional provision includes the following:

> (23)(A) "Retail sales" or "sale at retail" means a taxable sale of tangible personal property or <u>specifically taxable services</u> to a consumer or to any person <u>for any purpose other than for resale</u>. (emphasis added).

Tenn. Code Ann. § 67-6-313(a) provides an exception to the imposition of sales taxes for certain transactions involved in interstate commerce. That provision is as follows:

7

> (a) It is not the intention of this chapter to levy a tax upon articles of tangible personal property imported into this state or produced or manufactured in this state for export.
> (emphasis added).

Tenn. Code Ann. § 67-6-322 provides an exemption from the imposition of sales taxes for transactions in which the customer is a type of organization that is exempt from federal income taxation under §501(c) of the Internal Revenue code. That statute states that, "There is exempt from the provisions of this chapter any sales or use tax upon tangible personal property or taxable services sold, given, or donated to any (tax-exempt organization of the type exempt from federal income taxation under §501(c ) of the Internal Revenue Code.)"

Virtually all of the foregoing statutes were dealt with by this Court in an opinion authored by Chief Justice Anderson in Eusco, Inc. v. Huddleston, 835 S.W.2d 576 (Tenn. 1992). The facts of that case were quite similar to those involved in this case. The taxpayer in Eusco sold tangible personal property and provided services to out-of-state customers and charged a lump sum price therefor. We held that the compensation received by Eusco, Inc. from the out-of-state customers was not subject to taxation under the Retailers' Sales Tax Act. We described the facts in Eusco as follows:

> The taxpayer, Eusco, Inc., is a Tennessee corporation with its principal place of business in White House, Tennessee. At its White House facility, truck bodies and related components are constructed for electric and telephone utility trucks. In the course of building the truck bodies, Eusco uses components it fabricates as well as components made by other manufacturers.
>
> Generally, the trucks are built and sold by using one of two different methods. In some cases, a bare truck cab and chassis is purchased directly from the manufacturer, such as General Motors or Ford, on which Eusco then builds and attaches the truck body and related components. Once the process is complete, the entire utility truck is sold to a telephone or electric company.

> In other cases, a bid is made upon a specified contract with a utility company. When Eusco is the successful bidder, the utility company purchases a bare truck cab and chassis from a manufacturer and causes it to be delivered by common carrier to the White House facility. Under the contract, a truck body and related components are then fabricated and attached according to the purchaser's specifications, and the completed truck is delivered to the utility company's place of business. This kind of transaction is referred to as a "drop shipment" sale.
>
> On October 3, 1989, after being audited by the Tennessee Department of Revenue for the period of December 1985 through June 1989, Eusco was assessed a deficiency in sales taxes and interest of $202,182. The assessment at issue here is sales taxes and interest of $78,337 upon nine "drop shipment" sales to out-of-state customers.
>
> The Commissioner taxed the "drop shipment" sales on the basis of Tenn. Code Ann. § § 67-6-201(1)(1983 & 1989) and 67-6-202(1983 & 1989), which levy a tax upon "the business of selling tangible personal property at retail in this state." In addition, the Commissioner taxed the "drop shipment" sales on the basis of Tenn.Code Ann.§§67-6-102(13)(F)(vi)(1983) and 67-6-102(22)(F)(vi)(1989) [now §67-6-102(23)(F)(vi)], which provide that taxable retail sales shall include "[t]he installing of tangible personal property . . . where a charge is made for such installation."

835 S.W.2d at 577-78.


We concluded in Eusco that the transactions involved were not taxable as sales of tangible personal property, because the sales did not occur within the State of Tennessee. In this regard, we provided the following analysis:

> The first issue we address is whether the plaintiff's sales to out-of-state customers were taxable as retail sales "in this state" under Tenn. Code Ann. § 67-6-201(1)(1983 & 1989) and § 67-6-202(1983 & 1989). "The elements necessary to constitute a sale are (1) transfer of title or possession, or both of (2) tangible personal property, for a (3) consideration." Hearthstone, Inc. v. Moyers, 809 S.W.2d 888, 890 (Tenn. 1991)(quoting Volunteer Val-Pak v. Celauro, 767 S.W.2d 635, 636 (Tenn. 1989)). See also Tenn. Code Ann.§§67-6-102(23)(A)(1989) and 67-6-102(14)(A)(1983). Since it is clear that there was a transfer

9

of tangible personal property for a consideration, we must determine whether the nine "drop shipment" sales involved a transfer of title or possession to the utility companies in Tennessee so as to make them taxable retail sales "in this state."

For Tennessee sales tax purposes, the place where title to tangible personal property is transferred to the buyer is determined under the applicable provisions of the Uniform Commercial Code. . . .

All of the "drop shipment" sales at issue in this case were F.O.B. to the utility companies' places of business, and there were no other aggreements between Eusco and the utility companies as to when or where title to the truck bodies passed. Title to the truck bodies therefore passed to the utility companies when Eusco completed its performance by delivering the trucks out-of-state to their places of business.

. . .

We conclude that title and possession of the truck bodies was transferred outside the State of Tennessee when Eusco employees delivered the trucks to the utility companies' places of business in accordance with the F.O.B. delivery terms of the contracts. Since Eusco's sales and deliveries of the truck bodies to out-of-state utility companies did not involve transfers of title or possession of tangible personal property in Tennessee, we hold that the "drop shipment" sales were not taxable sales at retail "in this state."

835 S.W.2d at 579-80.

We also concluded in Eusco that the transactions with out-of-state customers were not taxable as "installation services" under Tenn. Code Ann. § 67-6-102(23)(F)(vi). In this regard, we observed as follows:

> While it is true that a substantial part of Eusco's costs were for purchasing and installing the hydraulic booms, Eusco made no separate charge for installation services as is required for the application of Tenn. Code Ann. § 67-6-102(22)(F)(vi) [now 67-6-102(23)(F)(vi)]. In each of the sales, the contract provided for one price which covered all personal property and labor involved in building and attaching the truck body, including all component parts. (emphasis added).

10

835 S.W.2d at 581.

This Court further stated in Eusco as follows:

> The Retailers' Sales Tax Act defines "retail sales" or "sale at retail" as "a taxable sale of tangible personal property or specifically taxable services to a consumer or to any person for any purpose other than for resale." Tenn. Code Ann. § 67-6-102(13)(A)(1983); Tenn. Code Ann. § 67-6-102(22)(A)(1989) [ now § 67-6-102(23)(A)] (emphasis added). Items sold for resale, therefore, are exempt from the definition of ordinary retail sales . . ."

835 S.W.2d at 582.

We also determined in Eusco that the exemption from taxation for interstate commerce contained in Tenn. Code Ann. § 67-6-313(a) applied. This determination was predicated on our finding that the taxpayer in that case was a "manufacturer." However, a taxpayer's being a "manufacturer" is not a prerequisite for the application of Tenn. Code Ann. § 67-6-313(a). This statute applies, when the export requirement is met, to items of tangible personal property that are (i) imported into this state, (ii) produced in this state, or (iii) manufactured in this state. There is no requirement that the taxpayer involved be a "manufacturer."

In Eusco, this Court rejected the Department of Revenue's contention that LeTourneau Sales & Services, Inc. v. Olsen, 691 S.W.2d 531 (Tenn. 1985), applied. The latter case involved Tenn. Code Ann. § 67-6-102(23)(F)(iv), which includes within the definition of "retail sale," "sale at retail," and "retail sales price" "(iv) the performing for a consideration of any repair services with respect to any kind of tangible personal property." The Department of Revenue makes a similar argument in this case. Based on the uncontradicted affidavit of Ernest W. Colbert (that Colemill Enterprises, Inc.'s services do

11

"not involve correcting any problem, defect, or malfunction"), Tenn. Code Ann. § 67-6-102(23)(F)(iv) has no more applicability in this case than it did in Eusco.

Based on the provisions of the Retailers' Sales Tax Act quoted above and on this Court's analysis in Eusco, we conclude that the sale of tangible personal property by Colemill Enterprises, Inc. to Bessemer Plywood Corporation was not taxable because it was a sale for resale. If such sale was F.O.B. to an out-of-state destination (as was the sale to Filtrex, Inc.), then the sale to Bessemer Plywood Corporation was not subject to taxation as a sale of tangible personal property for the additional reasons (i) that it occurred outside the State of Tennessee and (ii) that the interstate commerce exemption applies. Colemill Enterprises, Inc.'s transaction with Bessemer Plywood Corporation was not taxable as "installation services" because (i) no separate charge was made for installation services, and (ii) it was a sale for resale. If the transaction was F.O.B. to an out-of-state designation, then the transaction was not taxable "installation services" for the additional reasons (i) that it occurred outside the state of Tennessee and (ii) that the interstate commerce exemption applies.

Based on the same analysis, the taxpayer's sale of tangible personal property to Filtrex, Inc. was not a taxable sale of tangible personal property because (i) it occurred outside the state of Tennessee, and (ii) the interstate commerce exemption applies. Such sale to Filtrex, Inc. may be exempt from taxation for the additional reason that Filtrex, Inc. qualifies as a tax exempt entity under Tenn. Code Ann. § 67-6-322. The transaction with Filtrex, Inc. was not taxable " installation services" because (i) no separate charge was made for the installation services and (ii) the interstate commerce exemption applies. The exemption for tax exempt organizations may also apply with respect to the installation services issue.

12

## CONCLUSION

We conclude that neither the transaction with Bessemer Plywood Corporation nor the transaction with Filtrex, Inc. involved a taxable sale of tangible personal property or taxable installation services.  Having reached this conclusion, we find it unnecessary to address the other issues presented in the respective applications.  This case is remanded to the trial court for entry of summary judgment in favor of Colemill Enterprises, Inc. and the awarding of reasonable attorney's fees and expenses of litigation, which are mandatory under Tenn. Code Ann. § 67-1-1803(d). <u>See</u>  <u>Carson Creek Vacation Resorts v. Department of Revenue</u> 865 S.W.2d 1, 2 (Tenn. 1993).

                                                  _____

                                                  Frank F. Drowota, III, Justice

**Concur:**

Anderson, C. J.
Birch and Holder, J.

Reid, J. - Not participating.