IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
MARCH 1, 2005 Session

# WYLIE STEEL FABRICATORS, INC. v. RUTH E. JOHNSON, COMMISSIONER OF REVENUE FOR THE STATE OF TENNESSEE

**Direct Appeal from the Chancery Court for Davidson County**
**No. 02-275-I    Irvin H. Kilcrease, Judge**

_____

**No. M2003-02482-COA-R3-CV - Filed April 28, 2005**

_____

This appeal involves a sales and use tax assessment issued by the Tennessee Department of Revenue against a taxpayer engaged in the business of fabricating steel products for use in various structures. The taxpayer obtained purchase orders from three churches for raw materials to be used in the fabrication of steel products which were to be incorporated into the churches then under construction. The taxpayer secured the raw materials, fabricated the steel products, and installed them in the churches. The taxpayer did not pay sales or use tax on any of the raw materials used in the fabrication process. The department subsequently audited the taxpayer and assessed a tax liability for taxes owed on the materials. The taxpayer paid the amount assessed and filed suit in the chancery court to contest the assessment. Specifically, the taxpayer asserted that it was entitled to an exemption under section 67-6-209(b) of the Tennessee Code. After both parties filed cross-motions for summary judgment, the chancery court granted the department's motion and denied the taxpayer's motion. We affirm in part, reverse in part, and remand this case to the trial court for further proceedings consistent with this opinion.

**Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Chancery Court Affirmed in Part, Reversed in Part and Remanded**

ALAN E. HIGHERS, J., delivered the opinion of the court, in which W. FRANK CRAWFORD, P.J., W.S., and HERSCHEL P. FRANKS, P. J., joined.

Gerald B. Kirksey, Timothy H. Nichols, Brentwood, TN, for Appellant

Paul G. Summers, Attorney General and Reporter, Wyla M. Posey, Assistant Attorney General, Nashville, TN, for Appellee

## OPINION

### I.
### FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Wylie Steel Fabricators, Inc. ("Wylie Steel" or "Appellant") is a Tennessee Corporation engaged in the business of fabricating steel products for use in various structures. Wylie Steel's principal business office is located in Brentwood, Tennessee, and its primary fabrication facility is located in Springfield, Tennessee. In order to fabricate steel products, Wylie Steel purchases raw materials from suppliers in Tennessee and other states. Ordinarily, Wylie Steel contracts with the general contractor at a particular construction project to fabricate and install the steel products to be used in the construction process. Wylie Steel does not utilize its own employees to install the steel products it fabricates but, instead, subcontracts with another company to carry out the installation process. Occasionally, Wylie Steel will sell some of the products it fabricates to other persons or businesses without installing the items. When Wylie Steel purchases raw materials from its suppliers, it does not pay sales tax at the time of purchase. Instead, Wylie Steel provides its suppliers with a resale certificate.

At issue in this case are three church construction projects undertaken in Tennessee for which Wylie Steel fabricated and installed the necessary steel products.[1] For each church project, the church issued a purchase order to Wylie Steel for the raw materials to be utilized in fabricating the steel products necessary for each construction project. The purchase orders did not contain a specific quantity of materials, but they merely expressed an approximate cost of securing such materials. After securing the raw materials, Wylie Steel contracted with the general contractor for each church project to fabricate, deliver, and install the fabricated steel products. The amount to be paid to Wylie Steel under each subcontract represented Wylie Steel's cost for securing the raw materials and fabricating them, as well as its overhead and profit.

On its Tennessee sales and use tax return, Wylie Steel claimed, as exempt sales, the cost of the raw materials it used to fabricate the steel products installed in the churches. In 2000, the Tennessee Department of Revenue ("Department") audited Wylie Steel for the period between December 1, 1996, through December 31, 1999. During the audit, the Department used a "test period" audit method and examined sample periods which included the three church projects. Wylie Steel signed an audit procedure agreement expressing its agreement with the audit procedure used, but it wrote the following at the bottom of the document: "WSF reserves the right to demonstrate actual volume of certain transaction types occurring during the audit periods selected above."

The Department identified the three church projects as having taxable sales and/or uses for which Wylie Steel did not pay taxes. The Department asserted that Wylie Steel could not claim the

---

[1] The three fabrication and installation projects were performed on Faith is the Victory Church located in Nashville, Tennessee, First Baptist Church located in Franklin, Tennessee, and Cornerstone Church located in Madison, Tennessee.

cost of the raw materials for each church as exempt. As a result, the Department issued a sales and use tax assessment against Wylie Steel in the amount of $201,720.00 for taxes owed and $47,194.62 in interest. Of the $201,720.00 in taxes assessed, $52,158.00 represented unpaid sales tax on materials purchased by Wylie Steel from out-of-state suppliers or from Tennessee suppliers by presenting a resale certificate which Wylie Steel later fabricated and installed on non-church projects. Wylie Steel did not challenge this portion of the assessment. The remainder, $149.562.00, represented tax allegedly owed by Wylie Steel on the purchase and use of materials it installed for tax exempt entities. Wylie Steel contested this portion of the assessment.

In March of 2001, Wylie Steel met informally with the Department to discuss the tax assessment. The Department's Administrative Hearing Officer subsequently informed Wylie Steel that the Department correctly assessed the tax liability. On July 27, 2001, Wylie Steel sent a check to the Department in the amount of $274,980.00 for payment in full of the tax assessment. The Department received the payment on July 30, 2001, and applied the payment to Wylie Steel's account. As of that date, $54,304.73 in interest had accrued on the challenged portion of the assessment, and $18,468.57 in interest had accrued on the unchallenged portion of the assessment. Thus, as of July 30, 2001, the total amount due was $274,493.30. Having overpaid by $486.70, the Department credited Wylie Steel's account in this amount.

On January 25, 2002, Wylie Steel filed a complaint in the Chancery Court of Davidson County against the Commissioner of Revenue ("Commissioner"), pursuant to section 67-1-1801 *et seq.* of the Tennessee Code,[2] to challenge the Department's tax assessment. Specifically, Wylie Steel alleged that it was entitled to the tax exemption found in section 67-6-209(b) of the Tennessee Code. In the alternative, Wylie Steel sought a refund of the tax it paid arguing that, as a result of the audit method utilized by the Department, it was required to make an overpayment in taxes.

The parties subsequently filed cross-motions for summary judgment. The trial court conducted a hearing on the motions on September 4, 2003, and entered a Final Judgment on

---

[2] Section 67-1-1801 of the Tennessee Code provides, in relevant part, as follows:

**Enumeration of remedies. —**

(a)(1) In all cases in which any officer, charged by law with the authority to assess taxes which are collected or administered by the commissioner of revenue, shall assess a tax alleged or claimed to be due, if the taxpayer against whom the assessment is made believes the assessment to be unjust, illegal or incorrect, the taxpayer's remedies shall be as follows:
(A) The taxpayer may pay the tax and file a claim for refund thereof and proceed as provided in this part; or
(B) The taxpayer may file suit against the commissioner in the chancery court in the appropriate county in this state, challenging all or any portion of the assessment of such tax including any interest and penalty associated therewith. . . .

Tenn. Code Ann. § 67-1-1801(a)(1) (2003); *see also* Tenn. Code Ann. § 67-1-1802 (2003) (governing refunds of taxes paid).

September 30, 2003, granting the Department's motion and denying Wylie Steel's motion. In entering its judgment in this case, the trial court made the following findings:

> Wylie Steel contends that it is entitled to a refund of taxes paid in the amount of $203,866.73 and that the refund claimed includes $159,744.55 regarding the taxes assessed on the materials used to construct the churches involved, and $44,172.18 in an asserted over-assessment on those materials by the Commissioner of Revenue. Wylie Steel contends that it is exempt from the sales and use taxes assessed in this case under Tenn. Code Ann. § 67-6-209(b). The Commissioner contends that Wylie Steel is not entitled to the contractor's use tax exemption stated in Tenn. Code Ann. § 67-6-209(b) since Wylie Steel either purchased or used all of the materials at issue in Tennessee, that none of the churches involved purchased any of the materials at issue, and that Wylie Steel could not, by law, resell and transfer title to any of those materials to those churches as tangible personal property since Wylie Steel contracted to install those materials as a part of realty. The Commissioner also contends that the Tennessee Code contains an explicit codification of this legal concept in Tenn. Code Ann. § 67-6-209(c) which clearly states that any transfer by Wylie Steel of materials that [sic] installs as part of realty cannot be considered a sale of tangible personal property for sales and use tax purposes. All of the materials involved in this case fit in this category.
>
> Upon consideration of the entire record including the complaint, answer, motions for summary judgment by both parties and memoranda in support thereof, responses and replies of both parties, affidavits, material fact statements, and the parties' joint stipulations of fact, the Court concludes that the Commissioner of Revenue properly assessed sales and use tax upon Wylie Steel's purchase or use of all the disputed items in this case and that Wylie Steel does not qualify for any exemption from the tax assessed. The Court finds that the churches involved did not have title to the tangible personal property involved prior to its installation as realty. Wylie Steel purchased all of that property, the materials at issue, and then later transferred those materials to the churches in the form of realty by installing them as part of a building. Thus, the materials were not transferred to the churches as tangible personal property. Such a transfer cannot, by law, be considered a sale or resale of tangible personal property since those materials are not transferred as tangible personal property, but rather as realty. Such a transfer also cannot, by law, be considered a sale or resale of those materials since Tenn. Code Ann. § 67-6-209(c) explicitly codifies this principle of

law and states that any such transfer does not constitute a sale under Tennessee sales and use tax law. Therefore, Wylie Steel is not entitled to the exemption it seeks under Tenn. Code Ann. § 67-6-209(b) since by law it could not sell, and thus transfer title, to the materials to the churches at issue in the form of tangible personal property.

. . . .

The Plaintiff is also not entitled to any refund of the amount that it claims to be an over-assessment by the Commissioner. The Plaintiff claims that this over-assessment amount exists even if the Commissioner's legal arguments regarding Tenn. Code Ann. § 67-6-209(b) are held to be correct. The Plaintiff is not entitled to a refund for the claimed over-assessment because Wylie Steel entered into an audit procedure agreement with the State of Tennessee and it was under an obligation to bring all of its information with respect to that audit period forward at that time during the audit. In that agreement, Wylie Steel agreed to the audit sampling procedure used by the Commissioner and agreed that the sample periods selected were representative of all transactions occurring throughout the entire audit period. Thus, as a matter of law, Wylie Steel could not wait until litigation and claim that it was over-assessed by asserting that a different audit method should be used to calculate the amount of tax due. The Court finds that the audit procedure agreement is a valid and binding agreement and that Wylie Steel is precluded from asserting that a different audit method from the one to which it agreed in the audit procedure agreement should be used to calculate the amount of the tax due in this case.

Wylie Steel subsequently filed an appeal to this Court. While neither party frames the issues to be resolved in this case in terms of a review of the trial court's grant of summary judgment, we are mindful that our primary task on appeal is to ascertain whether the trial court properly granted summary judgment to the Appellee in this case. To answer that question, we will need to consider the following issues, as we perceive them, raised by the Appellant on appeal:

I.      Whether the Appellant is entitled to the tax exemption found in section 67-6-209(b) of the Tennessee Code;
II.     Whether section 67-6-209(c) of the Tennessee Code negates the tax exemption in section 67-6-209(b) of the Tennessee Code; and
III.    Whether the Appellant is entitled to illustrate the actual volume of certain types of transactions to demonstrate that the Appellee's "test period" audit method resulted in an over-assessment in tax liability to the Appellant.

For the reasons set forth more fully herein, we affirm in part, reverse in part, and remand this case to the trial court with instructions to conduct further proceedings consistent with this opinion.

## II.
### STANDARD OF REVIEW

In assessing the correctness of the trial court's grant of summary judgment in this case, we employ the following standard of review:

> "Our review of a trial court's award of summary judgment is *de novo* with no presumption of correctness, the trial court's decisions being purely a question of law." *Scott v. Ashland Healthcare Ctr., Inc.*, 49 S.W.3d 281, 285 (Tenn. 2001) (citing *Mooney v. Sneed*, 30 S.W.3d 304, 306 (Tenn. 2000)). Summary judgment is appropriate where there is no genuine issue of material fact relevant to the claim or defense and where the movant is entitled to judgment as a matter of law on the undisputed facts. *See* Tenn. R. Civ. P. 56.03; *Bain v. Wells*, 936 S.W.2d 618, 622 (Tenn. 1997); *Carvell v. Bottoms*, 900 S.W.2d 23, 26 (Tenn. 1995).

*BellSouth Adver. & Publ'g Co. v. Johnson*, 100 S.W.3d 202, 205 (Tenn. 2003).

In interpreting and applying the pertinent statutory language to the facts in this case, we are guided by the following principles:

> Issues of statutory construction are questions of law that this Court reviews *de novo* without any presumption of correctness. *Bryant v. Genco Stamping & Mfg. Co.*, 33 S.W.3d 761, 765 (Tenn. 2000); *Freeman v. Marco Transp. Co.*, 27 S.W.3d 909, 911 (Tenn. 2000).
>
> Our duty in construing statutes is to ascertain and give effect to the intention and purpose of the legislature. *See Lipscomb v. Doe*, 32 S.W.3d 840, 844 (Tenn. 2000); *Freeman*, 27 S.W.2d at 911. "'Legislative intent is to be ascertained whenever possible from the natural and ordinary meaning of the language used, without forced or subtle construction that would limit or extend the meaning of the language.'" *Lipscomb*, 32 S.W.3d at 844 (quoting *Hawks v. City of Westmoreland*, 960 S.W.2d 10, 16 (Tenn. 1997)).
>
> When the statutory language is clear and unambiguous, we must apply its plain meaning in its normal and accepted use, without a forced interpretation that would limit or expand the statute's application. *See id.*; *Carson Creek Vacation Resorts, Inc. v. State Dep't of Revenue*, 865 S.W.2d 1, 2 (Tenn. 1993). Where an ambiguity

exists, we must look to the entire statutory scheme and elsewhere to ascertain the legislative intent and purpose. *State v. Walls*, 62 S.W.3d 119, 121 (Tenn. 2001); *Freeman*, 27 S.W.3d at 911. The statute must be construed in its entirety, and it should be assumed that the legislature used each word purposely and that those words convey some intent and have a meaning and a purpose. *Tennessee Growers, Inc. v. King*, 682 S.W.2d 203, 205 (Tenn. 1984). The background, purpose, and general circumstances under which words are used in a statute must be considered, and it is improper to take a word or a few words from its context and, with them isolated, attempt to determine their meaning. *First Nat'l Bank of Memphis v. McCanless*, 186 Tenn. 1, 207 S.W.2d 1007, 1009-10 (Tenn. 1948).

In addition to general principles of statutory construction, we must also consider the rules of construction specifically applicable to tax statutes. Statutes imposing a tax are to be construed strictly against the taxing authority. *See Covington Pike Toyota, Inc. v. Cardwell*, 829 S.W.2d 132, 135 (Tenn. 1992). However, statutes granting exemptions from taxation are construed strictly against the taxpayer. *Tibbals Flooring Co. v. Huddleston*, 891 S.W.2d 196, 198 (Tenn. 1994); *Covington Pike Toyota*, 829 S.W.2d at 135.

*Eastman Chem. Co. v. Johnson*, 151 S.W.3d 503, 506–07 (Tenn. 2004).

### III.
#### LAW AND ANALYSIS

#### A.
#### *Sales and Use Tax Assessed*

The Tennessee Retailers' Sales Tax Act ("the Act"), codified at section 67-6-101 *et seq*. of the Tennessee Code, governs the imposition of sales and use taxes in this state. The Act provides, in relevant part, as follows:

**Taxable privilege declared**. — It is declared to be the legislative intent that every person is exercising a taxable privilege who:
(1) Engages in the business of selling tangible personal property at retail in this state;
(2) Uses or consumes in this state any item or article of tangible personal property as defined in this chapter, irrespective of the ownership thereof or any tax immunity which may be enjoyed by the owner thereof. . . .

Tenn. Code Ann. § 67-6-201 (2003). "'Tangible personal property' means and includes personal property, which may be seen, weighed, measured, felt, or touched, or is in any other manner perceptible to the senses. . . ." Tenn. Code Ann. § 67-6-102(a)(31) (2003). "The commissioner[3] shall administer and enforce the assessment and collection of the taxes and penalties imposed by this chapter." Tenn. Code Ann. § 67-6-401 (2003). "The commissioner has the power to make and publish reasonable rules and regulations not inconsistent with this chapter or the other laws, or the constitution of this state or the United States, for the enforcement of the provisions of this chapter and the collection of revenues hereunder." Tenn. Code Ann. § 67-6-402(a) (2003).

The Act imposes a sales tax on the sale of tangible personal property in this state, providing:

> For the exercise of the privilege of engaging in the business of selling tangible personal property at retail in this state, a tax is levied on the sales price of each item or article of tangible personal property when sold at retail in this state; the tax is to be computed on gross sales for the purpose of remitting the amount of tax due the state and is to include each and every retail sale.

Tenn. Code Ann. § 67-6-202(a) (2003); *see also Colemill Enters., Inc. v. Huddleston*, 967 S.W.2d 753, 756 (Tenn. 1998). The Act defines a "retail sale," in relevant part, as follows:

> "Retail sales" or "sale at retail" means a taxable sale of tangible personal property or specifically taxable services to a consumer or to any person for any purpose *other than for resale. . . . Any sales for resale must, however, be in strict compliance with rules and regulations promulgated by the commissioner. . . .*

Tenn. Code Ann. § 67-6-102(a)(25)(A) (2003) (emphasis added). The Act defines a "sale" as follows:

> "Sale" means any transfer of title or possession, or both, exchange, barter, lease or rental, conditional, or otherwise, in any manner or by any means whatsoever of tangible personal property for a consideration, and includes the fabrication of tangible personal property for consumers who furnish, either directly or indirectly, the materials used in fabrication work, and the furnishing, repairing or serving for a consideration of any tangible personal property consumed on the premises of the person furnishing, preparing or serving such tangible personal property[.]

---

[3] "'Commissioner' means and includes the commissioner of revenue or the commissioner's duly authorized assistants[.]" Tenn. Code Ann. § 67-6-102(a)(3) (2003).

Tenn. Code Ann. § 67-6-102(a)(27)(A) (2003).

Thus, the Act excludes from the definition of retail sale a sale made to a taxpayer for resale. *Sec. Fire Prot. Co., Inc. v. Huddleston*, 138 S.W.3d 829, 837 (Tenn. Ct. App. 2003). However, sales for resale must strictly comply with the rules and regulations established by the Commissioner. Tenn. Code Ann. § 67-6-102(a)(25)(A) (2003). Under the rules promulgated by the Department, it is permissible for a contractor-dealer to avoid paying tax at the time of purchasing materials by providing the supplier a resale certificate. The rule, commonly referred to as "Rule 8," provides:

> (1) Contractors and sub-contractors engaged in the business of erecting, building or otherwise improving, altering and repairing real property of others, and also engaged in the business of selling building materials and supplies to other contractors, consumers, and users, and who may not be able to segregate that portion of the materials and supplies that they will use or consume in the fulfillment of their contracts from that portion of the materials and supplies that they will sell at retail, may give a resale certificate to the seller of the materials and supplies.
>
> (2) Contractor-dealers making sales of tangible personal property shall report all sales made, and all withdrawals from inventory for use as a contractor each month, and pay any applicable Sales or Use Tax due. Any withdrawal from inventory for use as a contractor shall be reported and the tax due thereon shall be paid with the return for the location of the inventory, regardless of the place of use, either in or out of the state.
>
> (3) Suppliers making sales of materials and supplies to contractor-dealers and delivering such materials and supplies to a job site for use, or tagging or marking particular materials and supplies for a particular job being performed by the contractor-dealer, shall collect the applicable Sales or Use Tax on those sales.

Tenn. Comp. R. & Regs. 1320-5-1-.08 (2000). Rule 8 permits a contractor-dealer to purchase materials under a certificate of resale when it cannot know, at the time of purchasing those materials, whether it will resell the materials or use them in the performance of a contract.[4] *See Sec. Fire Prot. Co.*, 138 S.W.3d at 838–39. Therefore, had Wylie Steel not presented a resale certificate when it purchased the raw materials in Tennessee it subsequently incorporated into the steel products for the

---

[4] During the proceedings below, the Department did not take a position regarding whether Wylie Steel qualified as a contractor-dealer under Rule 8. Wylie Steel contends that it is a contractor-dealer coming within the purview of Rule 8. In any event, we do not need to decide this issue in order to resolve the other issues presented for review on appeal.

churches, it would have been required to pay sales tax at the time of purchasing those materials. *See id.* at 838 (citing *Nasco, Inc. v. Jackson*, 748 S.W.2d 193, 195 (Tenn. 1998)); *see also* Tenn. Comp. R. & Regs. 1320-5-1-.68(2) (2000) ("All sales for resale which are not supported by resale certificates properly executed shall be deemed retail sales, and the dealer held liable for the tax. . . .").

The Act also imposes a use tax on the use of tangible personal property in this state, providing:

> A tax is levied at the rate of the tax levied on the sale of tangible personal property at retail by the provisions of § 67-6-202 of the cost price of each item or article of tangible personal property when the same is not sold but is used, consumed, distributed, or stored for use or consumption in this state; provided, that there shall be no duplication of the tax.

Tenn. Code Ann. § 67-6-203(a) (2003); *see also BellSouth Adver. & Publ'g Co. v. Johnson*, 100 S.W.3d 202, 205 (Tenn. 2003). "'Use tax' includes the 'use,' 'consumption,' 'distribution,' and 'storage'" of tangible personal property. Tenn. Code Ann. § 67-6-102(a)(34) (2003). The legislature has defined "use" as follows:

> "Use" means and includes the exercise of any right or power over tangible personal property incident to the ownership thereof, except that it does not include the sale at retail of that property in the regular course of business[.]

Tenn. Code Ann. § 67-6-102(a)(33(A) (2003).

The primary function of the use tax is to prevent the evasion of sales tax under the Act by a person purchasing tangible personal property outside of Tennessee for use within this state. *Young Sales Corp. v. Benson*, 450 S.W.2d 574, 576 (Tenn. 1970); *Sec. Fire Prot. Co.*, 138 S.W.3d at 841. The legislature intended the use tax to operate as a complement, not supplement, to the sales tax. *Young Sales Corp.*, 450 S.W.2d at 576. We have previously described the interplay between the sales and use taxes, stating:

> [T]he use tax levies a tax on property purchased out of Tennessee but used in this state where such property would have been subject to sales tax had it been purchased in Tennessee. *Young Sales*, 450 S.W.2d at 576. . . . As a result, taxpayers who import property for use in Tennessee pay the same amount in taxes as they would have paid had they purchased the property in Tennessee. The sales and use taxes, therefore, complement each other to impose a uniform amount of tax on property purchased in Tennessee and property purchased

out-of-state but used in Tennessee. *Id.* The use tax thereby puts Tennessee vendors on parity with out-of-state vendors who sell property for use in this state. *Id.*

*Sec. Fire Prot. Co.*, 138 S.W.3d at 841; *see also BellSouth Adver. & Publ'g Co.*, 100 S.W.3d at 206.

It is undisputed that Wylie Steel did not pay sales or use taxes on the purchase or use of the raw materials used to fabricate the steel products installed in the three churches at issue. In this case, we are called upon primarily to interpret and apply a specific provision of the Act which provides as follows:

> (b) Where a contractor or subcontractor defined in this chapter as a dealer uses tangible personal property in the performance of the contract, or to fulfill contract or subcontract obligations, whether the title to such property be in the contractor, subcontractor, contractee, subcontractee, or any other person, or whether the title holder of such property would be subject to pay the sales or use tax, *except where the title holder is a church,* private nonprofit college or university *and the tangible personal property is for church,* private nonprofit college or university *construction*, such contractor or subcontractor shall pay a tax at the rate prescribed by § 67-6-203 measured by the purchase price of such property, unless such property has been previously subjected to a sales or use tax, and the tax due thereon has been paid. The exemption provided for in this subsection (b) for private nonprofit colleges or universities shall apply only to the state portion of the sales tax. The sales or use tax levied by this chapter shall not apply to carpet installed for a church when the church is exempt from sales or use taxes under § 67-6-322.
>
> (c) The tax imposed by this section shall have no application where the contractor or subcontractor, and the purpose for which such tangible personal property is used, would be exempt from the sales or use tax under any other provision of this chapter. However, *the transfer of tangible personal property by a contractor who contracts for the installation of such tangible personal property as an improvement to realty does not constitute a sale*, except as provided in § 67-6-102(a)(9), and the contractor shall not be permitted on this basis to obtain the benefit of any exemptions or reduced tax rates available to manufacturers under § 67-6-206 or § 67-6-102(a)(25)(E). Each location of a taxpayer will be considered separately in determining whether the taxpayer qualifies or is disqualified as a manufacturer at that location.

Tenn. Code Ann. § 67-6-209 (2003).

On appeal, Wylie Steel contends that its transfer of the raw materials to the individual churches in this case falls within the definition of a "sale" under section 67-6-102(a)(27)(A) of the Tennessee Code. In turn, it argues that it is exempt from paying sales tax "upon tangible personal property or taxable services sold, given, or donated to any . . . church, temple, synagogue or mosque[.]" Tenn. Code Ann. § 67-6-322(a)(1) (2003). Regarding the use taxes assessed by the Department, Wylie Steel asserts that it qualifies for the exemption in section 67-6-209(b) of the Tennessee Code. In essence, Wylie Steel takes the position that, pursuant to the purchase orders issued by each church, the churches became title holders to the raw materials subsequently used by Wylie Steel in fabricating the steel products it later installed in each church. Wylie Steel seeks to differentiate between the initial purchase of the raw materials and the subsequent contract entered into between Wylie Steel and the general contractors at each project for the fabrication and installation of the steel products.

The Commissioner contends that Wylie Steel does not qualify for the exemptions it seeks because the churches never became a "title holder" of the raw materials used in the fabrication of the steel products. The Commissioner argues that the churches could only obtain title to the raw materials in two ways: (1) purchase the materials directly from the supplier themselves, or (2) purchase those materials from Wylie Steel through a resale. As for the first manner of gaining title, the Commissioner argues that the undisputed facts show that Wylie Steel, not the churches, initially purchased the raw materials. Regarding the second method of gaining title, the Commissioner argues that section 67-6-209(c) of the Tennessee Code expressly provides that Wylie Steel's purchase and subsequent installation of the steel products as improvements to realty cannot constitute a sale, thereby making the churches title holders.

In order for Wylie Steel to avail itself of the exemption set forth in section 67-6-209(b) of the Tennessee Code and avoid paying the taxes assessed by the Department, we must necessarily determine whether the respective churches were "title holders" of the raw materials used by Wylie Steel to fabricate the steel incorporated into the structures. The legislature has not defined the term "title holder" for purposes of the tax statute at issue in this case. In ascertaining when title to tangible personal property is transferred from a seller to a buyer for purposes of Tennessee's tax statutes, the courts of this state look to the provisions of the Uniform Commercial Code as adopted by the legislature. *Eusco, Inc. v. Huddleston*, 835 S.W.2d 576, 579 (Tenn. 1992); *see also Sec. Fire Prot. Co., Inc. v. Huddleston*, 138 S.W.3d 829, 834 (Tenn. Ct. App. 2003). The UCC provides that "[*u*]*nless otherwise explicitly agreed* title passes to the buyer at the time and place at which the seller completes performance with reference to the physical delivery of the goods. . . ." Tenn. Code Ann. § 47-2-401(2) (2003) (emphasis added). "Unless provided otherwise, by contract, materials furnished by a subcontractor generally remain his property until they are affixed to the land of the owner or are delivered to, and accepted by, the owner as his property." *Vinsant Plumbing & Heating Co., Inc. v. Rudder Constr. Co., Inc.*, 486 S.W.2d 540, 543 (Tenn. Ct. App. 1971) (citations omitted); *see also Sec. Fire Prot. Co.*, 138 S.W.3d at 835.

In *Townsend Electric Company v. Evans*, 246 S.W.2d 967 (Tenn. 1952), an electrical dealer and contractor paid a sales and use tax assessment under protest and sued for a refund. *Townsend Elec. Co.*, 246 S.W.2d at 967. The electrical contractor purchased supplies he used in the construction of electric transmission lines in performing his contract. *Id.* Our supreme court, citing the decisions in cases from our sister states with approval, stated:

> The complainant in its capacity as an electrical contractor is *not a seller of the tangible personal property incorporated into the contract, but is a user of such property. . . .* "The complainant, by its undertaking, agreed to construct for a stated sum a completed system for transmitting electric power. In so doing it was not in the business of selling to the contractees items of tangible personal property as such. In other words, it is not engaged in the business of buying and selling to said contractees, *but in so far as they were concerned, it was engaged in the business of buying materials and equipment which it used in the assembling of an electrical project, for delivery to said contractees as a completed unit.*"
>
> "*When a contractor fabricates his materials for the contractee, and the completed structure is erected on the owner's land, it is as much real property as the land itself. The constituent elements of tangible personal property have been destroyed by their incorporation into the completed structure. And such a contractor, therefore, is not making a sale of tangible personalty to his contractee.*"
>
> "A contractor who buys building material is not one who buys and sells — a trader. He is not a 'dealer,' or one who habitually and constantly, as a business, deals in and sells any given commodity. He does not sell lime and cement and nails and lumber.
>
> "His undertaking is to deliver to his obligee some work or edifice or structure, the construction of which requires the application of skill and labor to these materials so that, when he finishes his task, the materials purchased are no longer to be distinguished, but something different has been wrought from their use and union. The contractor has not resold but has consumed the materials. Sales to contractors are sales to consumers * * *."

*Id.* at 969–70 (citations omitted) (emphasis added); *see also Pidgeon-Thomas Iron Co. v. Garner*, 495 S.W.2d 826, 832 (Tenn. 1973) (ruling that the taxpayer, a fabricator of steel products, was not a seller at retail of the tangible personal property it used to fabricate the steel products it incorporated into a structure); *Tenn. Blacktop, Inc. v. Benson*, 494 S.W.2d 760, 765 (Tenn. 1973) (noting that a contractor who installs fixtures in a building is not a seller of the tangible personal property used in performing the contract but a user of that personal property); *S.M. Lawrence Co. v. MacFarland*, 355 S.W.2d 100, 104 (Tenn. 1962) (holding that the contracts at issue called for completed air-

conditioning systems, therefore, the taxpayer was a user, not a seller, of the materials used in performing the contract); *John W. McDougall Co., Inc. v. Atkins*, 301 S.W.2d 335, 335 (Tenn. 1957) ("[A] contractor who erects buildings or installs fixtures therein is not 'a seller of the tangible personal property incorporated into the contract, but is a user of such property'.").

In the instant case, Wylie Steel has not cited to any provision in the three subcontracts it entered into with the general contractors for each church expressly providing for the transfer of title to the general contractor or church of the raw materials purchased by Wylie Steel for use in fabricating the steel products. Our own independent review of each sub-contract reveals no provision specifically addressing when title to the raw materials passed from Wylie Steel to the churches. To the contrary, each subcontract states that Wylie Steel will furnish all materials and labor necessary to perform its obligations under the contract. Wylie Steel seeks to demonstrate that it resold the materials to the individual churches, thereby making the churches the "title holders" of the raw materials, by relying on the purchase orders issued by the churches. However, the individual purchase orders contained only "estimates" for the cost of the raw materials, they did not list any quantities of raw materials to be purchased, and they do not state the circumstances by which the churches will accept delivery of the raw materials. While the record does demonstrate that Wylie Steel invoiced the churches for the raw materials after purchasing them, Wylie Steel retained control of the materials in order to use them in fabricating the necessary steel products. It is undisputed that, shortly after receiving these purchase orders, Wylie Steel subcontracted with the general contractor at each site for the fabrication, delivery, and installation of its fabricated steel products. It is also undisputed that the amount to be paid Wylie Steel under each subcontract *included the cost incurred by Wylie Steel for raw materials* and fabrication, as well as its overhead and profit.

There is no indication in the record before this Court that the churches ever accepted delivery of the raw materials prior to their use in fabricating the steel to be used in the construction process. The record reveals that, contrary to the position taken by Wylie Steel, the churches were not entering into two distinct transactions with Wylie Steel — one for raw materials and one for fabrication of the steel needed in the construction process. To the contrary, the churches sought a completed structure which would incorporate the steel fabricated and installed by Wylie Steel as one of the subcontractors on each project. After Wylie Steel performed its contract and installed the steel products it fabricated into the churches, the steel products became real property. Accordingly, Wylie Steel could not have resold the raw materials to the churches at this point either. *See* Tenn. Code Ann. § 67-6-102(a)(27)(A) (2003) (defining "sale" as the transfer of tangible personal property).

The position taken by our supreme court in the aforementioned cases is also incorporated into the following rule adopted by the Commissioner, which provides:

> Contractors engaged in constructing or improving real property, whether on a lump sum or cost-plus basis, *are purchasers and consumers of the materials used by them*, and are required to pay the Sales and Use Tax on such materials or equipment purchased or imported into this State for use in connection with their contracts.

Tenn. Comp. R. & Regs. 1320-5-1-.07(1) (2000) (emphasis added). Furthermore, in section 67-6-209(c) of the Tennessee Code, the legislature expressly provided, in relevant part, as follows:

> However, *the transfer of tangible personal property by a contractor who contracts for the installation of such tangible personal property as an improvement to realty does not constitute a sale*, except as provided in § 67-6-102(a)(9), and the contractor shall not be permitted on this basis to obtain the benefit of any exemptions or reduced tax rates available to manufacturers under § 67-6-206 or § 67-6-102(a)(25)(E).

Tenn. Code Ann. § 67-6-209(c) (2003) (emphasis added). The statutory language is not ambiguous, and none of the exceptions or exemptions referenced in the statute apply in this case.[5] Therefore, based upon the undisputed facts in this case, Wylie Steel, as a matter of law, did not sell the raw materials to the churches but, instead, used them in the performance of its contracts. Accordingly, we affirm the trial court's grant of summary judgment to the Commissioner on this issue.

### B.
### *The Audit Procedure Agreement*

The Audit Procedure Agreement entered into between the parties contains the following provision below the signature of Wylie Steel's representative:

> I concur with the Tennessee Department of Revenue Tax Auditor for the procedures to be used in the audit. I believe that the transactions included in the period(s) selected are representative of all transactions occurring during the audit period from 12-1-96 to 12-31-99.

Wylie Steel's representative also marked this section with an asterisk and wrote the following at the bottom of the page: "WSF reserves the right to demonstrate actual volume of certain transaction types occurring during the audit periods selected above."

On appeal, Wylie Steel contends that the trial court erred in refusing to allow it to illustrate the actual volume of certain types of transactions in order to show that the Department's "test period" audit method resulted in an over-assessment of tax liability. In asserting that it reserved the

---

[5] Wylie Steel argues that the legislature enacted section 67-6-209(c) of the Tennessee Code to limit a contractor's right to qualify for a manufacturer's exemption. Wylie Steel devoted a significant portion of its brief and oral argument to the legislative history of the statute and policy arguments in an attempt to bolster its position on this issue. When dealing with statutory language, however, we must "examine the language of the statute and, if the language is unambiguous, apply the ordinary and plain meaning." *Galloway v. Liberty Mut. Ins. Co.*, 137 S.W.3d 568, 570 (Tenn. 2004) (citing *Parks v. Tenn. Mun. League Risk Mgmt. Pool*, 974 S.W.2d 677, 679 (Tenn. 1998)). Only when a statute is ambiguous do we "examine the entire statutory scheme and the legislative history to ascertain and give effect to the legislative intent." *Id.*; *see also Eastman Chem. Co. v. Johnson*, 151 S.W.3d 503, 507 (Tenn. 2004).

right to do so in the Audit Procedure Agreement, Wylie Steel argues that the trial court's grant of summary judgment on this issue stands in direct contravention of the remedies permitted a taxpayer under section 67-1-1801 of the Tennessee Code. Conversely, the Department argues that Wylie Steel signed the Audit Procedure Agreement which specified the periods to be used under the sample audit method. The Department contends that, since Wylie Steel did not come forward with new information during the audit period, it is foreclosed from doing so after the audit was concluded and the tax liability assessed. The Department, however, cites to no authority for this proposition, nor do we find citation to any authority to support its position in its response to Wylie Steel's motion for summary judgment.

The legislature has provided that, when a taxpayer is assessed a tax liability by the Department which the taxpayer believes "to be unjust, illegal or incorrect," then the taxpayer may file suit "challenging all or any portion of the assessment of such tax including any interest and penalty associated therewith." Tenn. Code Ann. § 67-1-1801 (a)(1)(B) (2003). When a taxpayer challenges a tax assessment issued by the Department, the court must presume the assessment to be correct. *Stratton v. Jackson*, 707 S.W.2d 865, 867 (Tenn. 1986). In evaluating a taxpayer's challenge to the assessment issued by the Department, our supreme court has provided the courts of this state with the following guidance:

> The burden of proof is upon the taxpayer to prove that the assessment made is incorrect and to prove its right to recovery by clear and convincing evidence. . . .
>
> . . . .
>
> This rule clearly places the burden upon the taxpayer to disprove the result of the assessment made by the Department of Revenue.
>
> . . . .
>
> Vague allegations by the taxpayer to the effect that the Department's method of ascertaining the taxes due from him was incorrect are not sufficient to carry the taxpayer's burden. He must show by a preponderance of evidence that he not only has overpaid his taxes, but, also, the amount of such overpayment.
>
> . . . .
>
> We hold that the taxpayer in this case has failed to carry its burden of proof. It has failed to produce an audit, actual books and records, or summaries thereof, or other evidence to establish that it owes less taxes than the amount assessed by the Department of Revenue. The taxpayer has done no more than to make allegations to the effect that the State's audit method was incorrect, inapplicable or constitutes only an estimate; this is wholly insufficient to support a judgment in favor of the taxpayer.

*Edmondson Mgmt. Serv., Inc. v. Woods*, 603 S.W.2d 716, 717–18 (Tenn. 1980) (citation omitted).

In this case, Wylie Steel presented sufficient evidence to raise a factual issue as to whether the Department over-assessed its tax liability. In the trial court below, Wylie Steel asserted that the Department over-assessed its tax liability by $44,172.18. Thus, it asserted the amount of overpayment. In addition, Wylie Steel submitted the deposition testimony and affidavits of Walter E. Porter, Jr. ("Mr. Porter"), Wylie Steel's treasurer. In his deposition, Mr. Porter explains how he believes the Department over-assessed Wylie Steel's tax obligation. Furthermore, attached to Mr. Porter's deposition are accounting and financial documents which allegedly prove this over-calculation. Unlike the taxpayer in *Edmondson Management Service, Inc.*, 603 S.W.2d at 718, Wylie Steel has done more than make a perfunctory allegation that the Department has miscalculated its tax obligation.[6] Accordingly, the trial court erred in holding that Wylie Steel was precluded from presenting evidence of an over-assessment at trial because it did not present such evidence during the audit. Therefore, we reverse the trial court's decision to grant summary judgment to the Department on this issue. On remand, the trial court is instructed to determine whether the Department has over-assessed Wylie Steel's tax liability in accordance with section 67-1-1801 *et seq.* of the Tennessee Code.

## C.
### *Attorney's Fees*

Both parties have asked this Court to award them their respective attorney's fees and litigation expenses incurred in this case pursuant to section 67-1-1803 of the Tennessee Code. Tennessee follows the American Rule which provides that, absent a statute or agreement to the contrary, each litigant is responsible for paying its own attorney's fees and litigation expenses. *State v. Brown & Williamson Tobacco Corp.*, 18 S.W.3d 186, 194 (Tenn. 2000). Section 67-1-1803(d) of the Tennessee Code provides as follows: "The court shall award to the prevailing party reasonable attorney's fees and expenses of litigation *up to twenty percent (20%) of the amount assessed or denied*, including interest after payment." Tenn. Code Ann. § 67-1-1803(d) (2003) (emphasis added). Since we find it necessary to remand this case to the trial court for a determination as to whether the amount assessed by the Department is correct, we cannot properly assess such fees and expenses at this stage of the proceedings. Accordingly, we leave the application of section 67-1-1803(d) of the Tennessee Code to the trial court after it determines the proper amount of tax to be assessed in this cause.

---

[6] The Commissioner noted that Wylie Steel has not conducted its own independent audit and presented those results to the trial court. The Commissioner also directs our attention to the fact that Mr. Porter's testimony simply expresses the results of his recalculation of the three church projects which were part of the sample period used by the Department. While Wylie Steel has not presented proof of the actual volume of certain transactions for the audit period, it has presented sufficient evidence to create a disputed issue of fact regarding the correctness of the amount assessed by the Department. *See* Tenn. Code Ann. § 67-1-1801(a)(1) (2003).

# IV.
## CONCLUSION

For the aforementioned reasons, we affirm in part and reverse in part the decision of the trial court in granting summary judgment to the Appellant. This case is remanded to the trial court with instructions to conduct further proceedings consistent with this opinion. Costs of this appeal are to be shared equally between the Appellant, Wylie Steel Fabricators, Inc. and its surety, and the Appellee, Ruth E. Johnson, Commissioner of Revenue for the State of Tennessee, for which execution may issue if necessary.[7]

_____
ALAN E. HIGHERS, JUDGE

---

[7] " Except as otherwise provided by statute or these rules, . . . if a judgment is affirmed or reversed in part . . . . costs shall be allowed only as ordered by the appellate court." Tenn. R. App. P. 40(a) (2004). "In cases involving the state of Tennessee, its officers, or agencies, costs shall be awarded in accordance with the provisions of subdivision (a) of this rule." Tenn. R. App. P. 40(b) (2004).