**STATE of Tennessee**

v.

**Colico S. WALLS.**

Supreme Court of Tennessee,
at Jackson.

Dec. 11, 2001.

W. Mark Ward and Garland Erguden, Assistant District Public Defenders, Memphis, Tennessee, for the appellant, Colico S. Walls.

Paul G. Summers, Attorney General & Reporter; Michael E. Moore, Solicitor General; Lucian D. Geise and Mark A. Fulks, Assistant Attorneys General, Nashville; William L. Gibbons, District Attorney General; and Jennifer S. Nichols, Assistant District Attorney General, Memphis, for the appellee, State of Tennessee.

**OPINION**

E. RILEY ANDERSON, J., delivered the opinion of the court, in which FRANK F. DROWOTA, III, C.J., and ADOLPHO A. BIRCH, JR., JANICE M. HOLDER and WILLIAM M. BARKER, JJ., joined.

The defendant was convicted of escape from a penal institution and theft of property over $1,000. The Court of Criminal Appeals affirmed. We granted this appeal to determine the following issues: (1) whether a defendant's flight from the rear of a patrol car constitutes the offense of

escape from a penal institution under Tenn.Code Ann. § 39–16–605; (2) whether the escape statute is unconstitutionally vague; and (3) whether the trial court erred in failing to instruct the jury on the lesser included offense of attempted escape. After considering the record and applicable authority, we conclude that the legislature did not intend that a defendant's flight from the rear of a patrol car would constitute escape from a penal institution under Tenn.Code Ann. § 39–16–605. We therefore dismiss the conviction for escape from a penal institution, but affirm the conviction for theft. The judgment of the Court of Criminal Appeals is affirmed in part and reversed in part, and the case is remanded to the trial court for any further proceedings.[1]

On May 24, 1997, the defendant, Colico Walls, was arrested for theft of an automobile by two police officers near Springdale and Brown streets in Memphis, Tennessee. The officers handcuffed Walls with his hands behind his body and placed him in the rear of their patrol car. When the officers saw that Walls had managed to move his cuffed hands to the front of his body, they removed him from the car and handcuffed him once again with his hands behind his body. To ensure that Walls would not move his hands, the officers used a second pair of handcuffs to secure the first pair of handcuffs to Walls' belt loop. The officers also secured Walls' legs with a "rip-hobble" device.

The officers placed Walls in the rear compartment of their police patrol car. According to the officers, the interior of the patrol car contained substantial modifications from standard vehicles sold to the public: for instance, the front and rear compartments of the patrol car were separated by a barrier of metal and plexiglass; the rear seat was made of solid polymer plastic; and the rear interior door handles were inoperative.

While en route to the Shelby County Criminal Justice Center, the officers saw that despite the restraints Walls had once again managed to move his hands to the front of his body and had also removed the leg restraints. The officers slowed the car, intending to stop and once again secure the defendant. Before the car came to a stop, Walls kicked out the rear window of the car; dived from the moving vehicle head first; and ran 20 to 30 feet before being apprehended.

The defendant was later convicted of felony escape from a penal institution and theft of property over $1,000. In affirming the convictions, the Court of Criminal Appeals held (1) that the evidence was sufficient to support the conviction for escape because the rear of a police patrol car is a "penal institution" as defined in Tenn.Code Ann. § 39–16–601(4); (2) that the offense of escape under Tenn.Code Ann. § 39–16–605 is not unconstitutionally vague; and (3) that the defendant waived the issue of lesser included offenses by failing to raise it in the motion for a new trial.

We granted the defendant's application to appeal.

### ANALYSIS

We begin our review by examining the precise language of the relevant statutes governing the offense of escape. The penal institution escape statute provides that it is "unlawful for any person arrested for, charged with, or convicted of an offense to escape from a penal institution, as defined in § 39–16–601." Tenn.Code Ann. § 39–

---

1. Oral argument was heard in this case on October 5, 2001, in Gallatin, Sumner County, Tennessee, as part of this Court's S.C.A.L.E.S.

(Supreme Court Advancing Legal Education for Students) project.

16–605 (1997). The statutory definition of a "penal institution" is as follows:

> (4) "Penal institution," for the purposes of this part, includes any institution or facility used to house or detain a person:
>
> (A) Convicted of a crime; or
>
> (B) Adjudicated delinquent by a juvenile court; or
>
> (C) Who is in direct or indirect custody after a lawful arrest.

Tenn.Code Ann. § 39–16–601(4) (1997).

The State argues that the Court of Criminal Appeals properly concluded that the evidence was sufficient to support the defendant's conviction because the rear of the officers' police patrol car was a "facility" specifically designed, constructed, and used for detaining a person following an arrest. *See* Tenn.Code Ann. § 39–16–601(4) (1997). The defendant responds that the evidence was insufficient because the legislature did not intend for a police patrol car to be considered a penal institution for the offense of escape under Tenn. Code Ann. § 39–16–605. The defendant asserts that the Court of Criminal Appeals' interpretation of "facility" is overly broad and inconsistent with the legislative history of the applicable statutes and the overall statutory scheme.

■ Issues of statutory construction are questions of law that this Court reviews *de novo* without a presumption of correctness. *Freeman v. Marco Transp. Co.,* 27 S.W.3d 909, 911 (Tenn.2000). Our duty in interpreting statutes is to ascertain and give effect to the intent and purpose of the legislature. *Id.; see also Mooney v. Sneed,* 30 S.W.3d 304, 306 (Tenn.2000). If the language in a statute is devoid of ambiguity, we must apply its plain meaning without a forced interpretation that would limit or expand the statute's application. *Mooney v. Sneed,* 30 S.W.3d at 306. Where an ambiguity exists, we must look to the entire statutory scheme and elsewhere to ascertain legislative intent and purpose. *Freeman v. Marco Transp. Co.,* 27 S.W.3d at 911.

■ As we have discussed, the offense of escape requires that one escape from a "penal institution." *See* Tenn.Code Ann. § 39–16–605 (1997). The statute defines a "penal institution" as "any institution or facility used to house or detain a person...." Tenn.Code Ann. § 39–16–601(4) (1997). The language of the statute does not specifically include or exclude the rear compartment of a police patrol car and therefore does not expressly address the issue in this case. The Court of Criminal Appeals searched for guidance by turning to *Webster's* dictionary for a broad definition of "facility": "something designed, built, installed, etc. to serve a specific function affording a convenience or service." *Webster's New Universal Unabridged Dictionary* 690 (1996). In our view, however, neither the plain language of the statute nor the extremely broad definition found in *Webster's* dictionary resolves the question in this case.

To determine the legislative intent, we first examine the legislative history of the escape offense. The prior version of the statute was worded the same as the present version insofar as it prohibited escape from a "penal institution." *Compare* Tenn.Code Ann. § 39–16–605 (1991) with Tenn.Code Ann. § 39–16–605 (1997). The 1991 version differed, however, in that it defined a "penal institution" as "any institution used to house or detain a person: (A) [c]onvicted of a crime or (B) [w]ho is in direct or indirect custody after a lawful arrest." *See* Tenn.Code Ann. § 39–16–601(4) (1991). In contrast, the present definition of "penal institution," which was enacted in 1996, not only added the word "facility," which is relied upon by the State and the Court of Criminal Appeals, but

also broadened the class of persons detained to those "adjudicated delinquent by a juvenile court." *See* Tenn.Code Ann. § 39–16–601(4) (1997).

This revised definition of a "penal institution" emerged from the legislature's 1996 comprehensive provisions governing juveniles and the adjudication of delinquent children. *See* 1996 Tenn. Pub. Acts ch. 1089. These statutes provide, in part, that "detention" of a juvenile "means confinement in a secure or closed type of *facility* which is under the direction or supervision of the court or a *facility* which is designated by the court or other authority as a place of confinement for juveniles." Tenn.Code Ann. § 37–1–102(b)(13) (2001) (emphasis added).

The juvenile statutory provisions provide that the detention of a juvenile shall be separate and apart from adult prisoners.[2] For example, a child alleged to be delinquent or unruly may only be detained in the following places:

(1) A licensed foster home or a home approved by the court;

(2) A *facility* operated by a licensed child care agency;

(3) A detention home or center for delinquent children which is under the direction or supervision of the court or other public authority or of a private agency approved by the court; or

(4) Subject to subsection (e), any other suitable place or *facility* designated or operated by the court.

Tenn.Code Ann. § 37–1–116(a) (2001) (emphasis added). Likewise, if a juvenile is

found delinquent, he or she may be placed "in an *institution, camp or other facility* for delinquent children operated under the direction of the court or local public authority." Tenn.Code Ann. § 37–1–131(a)(3) (2001) (emphasis added).

When viewed in this context, the legislature's intent in revising the definition of "penal institution" by adding both "facility" and a person "adjudicated delinquent by a juvenile court" becomes apparent. The legislature recognized that the juvenile statutory provisions clearly differentiate facilities for the detention of juveniles from facilities for the detention of adults. As a result, it revised the definition of "penal institution" to clarify that the offense of escape may apply to juveniles adjudicated delinquent who escape from juvenile facilities.[3] There is simply no indication that the legislature used the word "facility" in any broader context than described in the statute and simply no evidence that it intended the word to include police patrol cars. Accordingly, we believe that the Court of Criminal Appeals erred in adopting a broad definition of "facility" to include police patrol cars without considering the legislative history and intent of the statute.

Our conclusion is supported by an analysis of the overall statutory scheme as well. The offense of escape falls under Title 39, chapter 16, part 6 of our criminal statutory code, which contains offenses related to "obstruction of justice." *See* Tenn.Code Ann. § 39–16–601 (1997). One related offense in the same statutory chapter and

**2.** *See, e.g.,* Tenn.Code Ann. § 37–1–116(e) (2001) ("No child may be detained in any jail or other facility for the detention of adults, except as provided . . . ."); *see also* Tenn.Code Ann. § 41–1–101 (1997 & Supp.2001) (governing state prisons); Tenn.Code Ann. § 41–2–101 (1997 & Supp.2001) (governing county jails and workhouses).

**3.** A juvenile who has been alleged or adjudicated delinquent also may be charged with the offense of escape or attempted escape by petition to the juvenile court. *See* Tenn.Code Ann. § 37–1–116(j) (2001).

part is "resisting" a stop, frisk, halt, arrest or search, which occurs when a person

> intentionally prevent[s] or obstruct[s] anyone known to the person to be a law enforcement officer, or anyone acting in a law enforcement officer's presence and at such officer's direction, from effecting a stop, frisk, halt, arrest or search of any person, including the defendant, by using force against the law enforcement officer or another.

Tenn.Code Ann. § 39–16–602 (1997 & Supp.2001). Another related offense, "evading arrest," provides that "it is unlawful for any person to intentionally flee by any means of locomotion from anyone the person knows to be a law enforcement officer if the person: (A) [k]nows the officer is attempting to arrest the person; or (B) *[h]as been arrested.*" Tenn.Code Ann. § 39–16–603 (1997) (emphasis added).

Accordingly, the apparent similarities in the offenses of resisting arrest, evading arrest, and escape, underscore the importance of ascertaining the legislative intent and purpose in interpreting and applying each offense. A fair reading of these related statutes indicates that "resisting" occurs when one intentionally obstructs an officer from *effecting* a stop, frisk, halt, *arrest* or search by using force, see Tenn. Code Ann. § 39–16–602 (1997 & Supp. 2001); that the offense of "evading arrest" occurs when one flees *while an arrest is attempted or has been made, see* Tenn. Code Ann. § 39–16–603 (1997); and that escape occurs *after* one is arrested, charged, or convicted of an offense, *and placed in a penal institution, see* Tenn. Code Ann. § 39–16–605 (1997).

We conclude that including a patrol car in the definition of "penal institution" unnecessarily expands the offense of escape to circumstances that the legislature intended to address under other statutory offenses. Indeed, had the legislature intended to include a patrol car in the definition of a penal institution, it could easily have done so with more specific statutory language. In the absence of such language, we are unwilling to presume such a broad application under the overall statutory scheme of offenses under chapter 16, part 6 of the criminal code.

### CONCLUSION

After considering the record and applicable authority, we conclude that a defendant's flight from the rear of a police patrol car does not constitute escape from a penal institution under Tenn.Code Ann. § 39–16–605. The remaining issues are pretermitted in light of our conclusion. We therefore dismiss the conviction for escape from a penal institution, but affirm the conviction for theft. The judgment of the Court of Criminal Appeals is affirmed in part and reversed in part, and the case is remanded to the trial court for any further proceedings. Costs of appeal are taxed to the State of Tennessee.