# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
### February 25, 2014 Session

## STATE OF TENNESSEE v. DARREN EUGENE FLESHMAN, ALIAS

**Appeal from the Criminal Court of Knox County**
**No. 95808    Steven W. Sword, Judge**

**No. E2013-00557-CCA-R3-CD - Filed June 18, 2014**

Darren Eugene Fleshman, alias[1] ("the Defendant"), was convicted of theft of property of at least $10,000 but less than $60,000. Following a sentencing hearing, the trial court sentenced the Defendant to four years, suspended to supervised probation, and ordered him to pay restitution in the amount of $42,815.93. On appeal, the Defendant challenges the following: the trial court's interpretation of the definition of "owner" under Tennessee Code Annotated section 39-11-106(a)(26) (2006); the sufficiency of the evidence at trial; and the amount of restitution imposed by the trial court. After a thorough review of the record and the applicable law, we affirm the Defendant's conviction. We, however, vacate the trial court's order of restitution and remand this matter for a new hearing as to the amount and manner of restitution.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment**
**of the Criminal Court Affirmed in Part and Vacated in Part; Remanded**

JEFFREY S. BIVINS, J., delivered the opinion of the Court, in which JAMES CURWOOD WITT, JR., and D. KELLY THOMAS, JR., JJ., joined.

Mark E. Stephens (on appeal) and Scott Carpenter, Assistant Public Defender (at trial), Knoxville, Tennessee, for the appellant, Darren Eugene Fleshman.

Robert E. Cooper, Jr., Attorney General and Reporter; Benjamin A. Ball, Senior Counsel; Randall Nichols, District Attorney General; and Kenneth F. Irvine, Jr., Assistant District Attorney General, for the appellee, State of Tennessee.

---

[1] It is the policy of this Court to use the name of the Defendant as written in the indictment. We cannot discern from the record why the indictment indicates that the Defendant's name is an alias.

# OPINION

## Factual and Procedural Background

The Defendant was indicted on October 27, 2010, on one count of theft of property of at least $10,000 but less than $60,000, a Class C felony. See Tenn. Code Ann. § 39-14-103, 105(a)(4)(2006). He proceeded to a jury trial on July 23, 2012.

James Lusby testified that he was working as a security officer at Home Federal Bank at the time of the events in question. He identified an account contract showing that the victim, Jean Hobock, had opened an account with the bank in 1995. The Defendant was designated as the beneficiary of that account and therefore was "entitled to the funds payable upon the account holder's death." Nobody other than Hobock ever was given authority to make deposits or withdrawals on the account.

Lusby confirmed that the account in question was such that it only generated an account statement once every six months, and he identified two account statements from June 2008 and December 2008. As with the account contract, the June 2008 account statement listed Jean Hobock as the owner of the account and the Defendant as the account beneficiary. The June 2008 statement listed the value of the account at $43,535.69. The December 2008 statement contained the designation: "Jean F. Hobock or Darren E. Fleshman." This was contrary to the account contract and the June 2008 statement because the use of "or" on the statement signified "a co-ownership situation."

Lusby identified a withdrawal receipt signed by the Defendant showing that $5,000 was withdrawn from the account on July 29, 2008. He also identified another withdrawal receipt signed by the Defendant showing that $37,815.93 was withdrawn from the account on August 19, 2008. Of the August 19, 2008 withdrawal, $5,000 was taken in cash, and the remainder was taken in a cashier's check made out to the Defendant. These two transactions completely emptied the account. Lusby further identified two "Affidavit of Forgery Withdrawal" documents completed by Hobock on November 28, 2008. In those documents, Hobock contested the two withdrawals as unauthorized.

Lusby testified that he began investigating the withdrawals in November 2008 following Hobock's allegations that the withdrawals were unauthorized. He discovered that "there was a coding error in our data entry department on the address on the account, and when that was done . . . the trustee status was removed from Ms. Hobock, and the appearance was given that [the Defendant] was made co-owner." As a result of this error, it would have appeared to any teller who referenced the computer information on the account that the Defendant was a co-owner of the account. Pursuant to this discovery, Lusby contacted the

Defendant by phone, explained the error, and "asked him to return the funds." However, the Defendant refused. According to Lusby, "[The Defendant] wouldn't divulge any information to me about where the funds were or what he had done with them, no. He said that he had the rights to the money." As a result of the bank error and the Defendant's refusal to cooperate, the bank was forced to replace the contested funds in Hobock's account.

On cross-examination, Lusby explained that the letters "TR," which stood for trustee and appeared on the June 2008 statement, were erroneously converted to "or," which appeared on the December 2008 statement. Lusby agreed that the Defendant did not forge the withdrawal slips or present himself to be someone other than himself. Lusby could not remember if the Defendant seemed surprised when Lusby called to discuss the contested withdrawals. He could not recall if anyone sent a letter to the Defendant asking him to return the money. Lusby identified his signature on an affidavit of complaint attached to the arrest warrant in the instant case. Lusby agreed that, once an account owner makes a deposit into an account, the bank "owns the money" but maintains a "debtor/creditor relationship to the person who deposits the money."

Annie Cox testified that she was working as a teller at the Fountain City branch of Home Federal Bank at the time of the events in question. Shown the documents from the Defendant's August 19, 2008 withdrawal, Cox identified a notation of the Defendant's name and driver's license number as her own handwriting. She testified that such a notation was normal procedure for conducting transactions with any person unfamiliar to the bank. Cox also testified that, on August 19, 2008, the Defendant approached her while she was working at the bank "and wanted to close his account out." She remembered that the Defendant "wanted some in cash, and the rest was a cashier's check made out to him." The Defendant claimed the account was his. She checked the computer records to confirm the Defendant's ownership of the account and then proceeded to complete the Defendant's request. She had not dealt with the Defendant either before or after the transaction in question.

On cross-examination, Cox explained that, at the time of the Defendant's transaction, the actual account contract containing the account owner's signature was not kept at the Fountain City branch because that is not where the account was opened. Therefore, she could check only the computer data regarding the account and could not view the original documents. Cox testified that "you cannot add someone to an existing account." Therefore, in order to add an owner to an account "you have to close the account out and reopen with another person." Cox agreed that, when she conducted the transaction in question, she "acted in an honest belief that [the Defendant] was entitled to those funds."

At this point in the trial, the Defendant made a motion to limit the anticipated testimony of Jean Hobock. The Defendant argued that any questioning "having to do with

ownership and permission authorization [was] not relevant with regard to Ms. Hobock" because Home Federal Bank, not Hobock, was the owner of the funds in Hobock's account. Specifically, the Defendant argued, "[W]hen a bank customer makes a deposit into an account, the customer becomes a creditor of the bank. Similarly, the bank becomes the owner of the deposited funds." The trial court noted, "When you have credit in there, contract rights; obviously, in a situation like this, I believe there can be more than one owner." The trial court further reasoned that "the bank did have interest in that money" but noted that the "account holder also still has an interest in that contract and the contract rights of it, and also in the interest or claim to that wealth." Accordingly, the trial court found that Hobock properly was considered an "owner" under the property theft statute, and, thus, her testimony regarding whether she had given the Defendant permission to withdraw funds was relevant.

Jean Hobock, the Defendant's mother, testified that the account in question was her "burial account," which was intended to cover her burial expenses. She testified that she had discussed the purpose of the account with the Defendant prior to the transactions in question. She stated that, sometime after the transactions in question, she went to the bank and discovered that the account was empty. She stated that she was the owner of the account and that her intention was that the Defendant would get the remainder of the money after she passed away. According to Hobock, she had explained this to the Defendant. She never gave the Defendant permission to make any withdrawals from the account. She did not give the Defendant permission to withdraw from the account because she was "sick at the time," and she "didn't know when [she] might have to use it."

On cross-examination, Hobock confirmed that Home Federal Bank did reimburse the contested withdrawals to her account.

At that point, the State rested its case-in-chief. The defense made a motion for a judgment of acquittal, which the trial court denied.

The Defendant chose to testify on his own behalf. According to the Defendant, "over the course of years" before the transactions in question, Hobock had "told [him] to go to the bank, and if [he] needed any money, that it was there for [him]." He denied having a conversation with Hobock in which she told him that he only would get the money in the account upon her death. The Defendant testified as to the July 29, 2008 withdrawal:

> I went to Home Federal, and I took the mail that was coming to 121 Hansard Road, and I showed it to the teller, and she said she wanted my driver's license and my social security card, and she had me sign some card, and she said – pulled me up on the computer, said, "how much money do you

want, Mr. Fleshman?" I said, "Well, how much can I access?" She said, "All of it." Said, "It's your money."

The Defendant stated that he used the $5,000 to buy a car. He believed the money was "available" to him and that the bank teller told him as much.

The Defendant confirmed that he returned to the bank on August 19, 2008, and withdrew the rest of the money from the account. He agreed that he took $5,000 in cash and the remainder in a cashier's check. He deposited the cashier's check into his personal account at a different bank. He first heard that there was a problem with the account in "November or December," when he was contacted by phone. He was "startled" by the phone call because he "didn't know who it was." He could not recall the substance of the conversation. When asked if he had "ever withdrawn any money from any of [Hobock's] bank accounts . . . over the last 30 years," the Defendant responded, "No, because I've not got nothing to do with them." He was arrested "a few months" after the phone call.

On cross-examination, the Defendant admitted that Hobock had not given him an account number or a "bank book" for the account in question. He testified that, contrary to her testimony, Hobock never told him that the account was a "burial account" or that he was not supposed to get the money until after Hobock died. He agreed that he never had made a deposit into the account, nor had he ever paid any taxes on the account. At the time he made the withdrawals in question, he had not communicated with Hobock for about seven months. He believed the money belonged to both he and Hobock because statements came to his address. However, he admitted that the address in question was owned by Hobock, who was allowing him to live there.

Following the Defendant's testimony, the defense rested. The jury deliberated and found the Defendant guilty of theft of property of at least $10,000 but less that $60,000. A sentencing hearing was held, and the trial court sentenced the Defendant to four years, suspended to supervised probation. The trial court also ordered the Defendant to pay restitution to Home Federal Bank in the amount of $42,815.93 with a minimum payment of $50 per month. The Defendant filed a motion for new trial, which the trial court subsequently denied. The Defendant filed a timely notice of appeal challenging: the trial court's interpretation of the definition of "owner" under Tennessee Code Annotated section 39-11-106(a)(26); the sufficiency of the evidence at trial; and the amount of restitution imposed by the trial court.

## Analysis

*"Owner" under Tennessee Code Annotated section 39-11-106(a)(26)*

The Defendant asserts that "the trial court erroneously interpreted the definition of 'owner' pursuant to [Tennessee Code Annotated section] 39-11-106(a)(26)" when it found that Hobock could be considered an "owner" of the account funds within the meaning of the property theft statute. According to the Defendant, "Ms. Hobock's status as a depositor made her a creditor of the Bank; Home Federal Bank retained sole ownership of all monies she deposited."

Issues of statutory construction are questions of law reviewed de novo without a presumption of correctness. State v. Walls, 62 S.W.3d 119, 121 (Tenn. 2001). On appeal, our duty in interpreting a statute "is to ascertain and give effect to the intent and purpose of the legislature." Id. Accordingly, "[this] Court should assume that the legislature used each word in the statute purposely and that the use of these words conveyed some intent." State v. Levandowski, 955 S.W.2d 603, 604 (Tenn. 1997). When the language of a given statute is "devoid of ambiguity," we must assign the statute "its plain meaning without a forced interpretation that would limit or expand the statute's application." Walls, 62 S.W.3d at 121. In doing so, this Court "may look to 'the language of the statute, its subject matter, the object and reach of the statute, the wrong or evil which it seems to remedy or prevent, and the purpose sought to be accomplished in its enactment.'" State v. Collins, 188 S.W.3d 721, 726 (Tenn. 2005) (quoting State v. Gilliland, 22 S.W.3d 266, 275 (Tenn. 2000)).

Under Tennessee Code Annotated section 39-14-103, "[a] person commits theft of property if, with intent to deprive the owner of the property, the person knowingly obtains or exercises control over the property without the owner's effective consent." "Owner" is statutorily defined as "a person, other than the defendant, who has possession of or any interest other than a mortgage, deed of trust or security interest in property, even though that possession or interest is unlawful and without whose consent the defendant has no authority to exert control over the property." Tenn. Code Ann. § 39-11-106(a)(26). In denying the Defendant's motion for new trial, the trial court reasoned,

> [W]e did have testimony that the bank was the owner of the money in the account, but we also know that Ms. Hobock has an interest in that, and the indictment refers to the property as bank account proceeds. . . . It was actually the proceeds, the value of that account that was in question here, and she, as the account holder, could give consent for anybody to withdraw. . . . [I]f you look at the statute 39-11-106 that defines "owner," it says, "Or any interest therein." This is certainly anybody that has an account with the bank has a

-6-

debtor/creditor relationship that is created, and the proceeds that came out of that bank came out against the credit that the bank owed her.

Therefore, the trial court reasoned that, for the purposes of the property theft statute, both Home Federal Bank *and* Hobock could be considered an "owner" of the account funds. We agree.

The definition of "owner" under Tennessee Code Annotated section 39-11-106(a)(26) is broad and extends to any person other than the Defendant who has "*any* interest other than a mortgage, deed of trust or security interest in property." Tenn. Code Ann. 39-11-106(a)(26) (emphasis added). Notably, the concept of ownership within the meaning of Tennessee Code Annotated section 39-11-106(a)(26) extends even to those whose "possession or interest is unlawful." Id. Furthermore, "an owner's possession of the property may be 'actual or constructive.'" State v. March, 293 S.W.3d 576, 592 (Tenn. Crim. App. 2008). Accordingly, this Court has interpreted the definition of "owner" within the meaning of the theft statute to extend to a variety of interests "broader than its commonly understood meaning." State v. Joel Christian Parker, No. M2001-00773-CCA-R3-CD, 2002 WL 31852850, at *2 (Tenn. Crim. App. Dec. 18, 2002) (holding that pawn shop employees "were clearly 'owners' within the meaning of sections 39-11-106(26) and 39-14-103" of property stolen from a pawn shop regardless of "who had actual title" to the property); see State v. March, 293 S.W.3d at 592 (holding that both a law firm and clients of that firm could be considered owners of funds stolen from the firm and stating that "ownership can be laid in either party"). Indeed, this Court has concluded that even a bank *teller* could be considered an "owner" within the meaning of the theft statute of bank funds stolen from the drawer at her teller station during the course of a bank robbery. See State v. Blankenship, No. E 2011-01550-CCA-R3-CD, 2012 WL 5356288, at *7 (Tenn. Crim. App. Oct. 31, 2012).

The legislative intent underlying the statutory definition of "owner" clearly was to give it a broad construction extending to a variety of interests. Lusby testified that Hobock had sole ownership of the account and thus had sole authority to withdraw from the account. It is uncontroverted that, without her consent, the Defendant had "no authority to exert control over the property." Tenn. Code Ann. § 39-11-106. As the owner of the bank account, Hobock clearly had an interest in the funds contained therein. Therefore, the proof established that Hobock was an "owner" of the account funds for the purposes of section 39-11-106(a)(26). Accordingly, the Defendant is entitled to no relief on this basis.

### *Sufficiency of the Evidence*

The Defendant asserts two arguments regarding the sufficiency of the evidence. First, the Defendant asserts that "the State failed to prove that [the Defendant] *knowingly* obtained

the bank account proceeds without Ms. Hobock's effective consent." Second, the Defendant asserts that "the Bank's effective consent to [the Defendant's] withdrawal negates the State's claim that [the Defendant] withdrew funds from trust account without the effective consent of Ms. Hobock." We will take up each issue in turn.

Our standard of review regarding sufficiency of the evidence is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979); see also Tenn. R. App. P. 13(e). After a jury finds a defendant guilty, the presumption of innocence is removed and replaced with a presumption of guilt. State v. Evans, 838 S.W.2d 185, 191 (Tenn. 1992). Consequently, the defendant has the burden on appeal of demonstrating why the evidence was insufficient to support the jury's verdict. State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982).

The appellate court does not weigh the evidence anew. Rather, "a jury verdict, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts" in the testimony and all reasonably drawn inferences in favor of the State. State v. Harris, 839 S.W.2d 54, 75 (Tenn. 1992). Thus, "the State is entitled to the strongest legitimate view of the evidence and all reasonable or legitimate inferences which may be drawn therefrom." Id. (citation omitted). This standard of review applies to guilty verdicts based upon direct or circumstantial evidence. State v. Dorantes, 331 S.W.3d 370, 379 (Tenn. 2011) (citing State v. Hanson, 279 S.W.3d 265, 275 (Tenn. 2009)). In Dorantes, our supreme court adopted the United States Supreme Court standard that "direct and circumstantial evidence should be treated the same when weighing the sufficiency of such evidence." Id. at 381. Accordingly, the evidence need not exclude every other reasonable hypothesis except that of the defendant's guilt, provided the defendant's guilt is established beyond a reasonable doubt. Id.

The weight and credibility given to the testimony of witnesses, and the reconciliation of conflicts in that testimony, are questions of fact. State v. Bland, 958 S.W.2d 651, 659 (Tenn. 1997). Furthermore, it is not the role of this Court to reevaluate the evidence or substitute its own inferences for those drawn by the jury. State v. Winters, 137 S.W.3d 641, 655 (Tenn. Crim. App. 2003) (citations omitted).

### The Defendant's Knowledge

The Defendant argues that "the State failed to prove that [the Defendant] *knowingly* obtained the bank account proceeds without Ms. Hobock's effective consent." According to the Defendant, "the State did not prove that [the Defendant] *knew* he did not have Ms. Hobock's consent to make the withdrawals," and, thus, the evidence at trial was legally

insufficient because "the State did not prove that [the Defendant] had the requisite mens rea for theft."

"A person commits theft of property if, with intent to deprive the owner of property, the person knowingly obtains or exercises control over property without the owner's effective consent." Tenn. Code Ann. § 39-14-103. Hobock testified that she created the account in question with the intent of keeping it as her "burial account" with the Defendant as the sole beneficiary of the remainder upon her death. This testimony comports with Lusby's testimony and the records maintained by Home Federal Bank that the account was opened by Hobock in 1995 with Hobock as the sole owner and the Defendant merely as a beneficiary. Lusby testified that, since the account was opened, Hobock had been the only individual with actual authority to make deposits or withdrawals. Hobock further testified that, during a conversation with the Defendant regarding the account, she had explained the nature of the account to the Defendant and believed that he understood. She stated that she had not given the Defendant permission to make withdrawals from the account because she was "sick at the time," and she "didn't know when [she] might have to use it."

The Defendant, however, claimed that Hobock had "told [him] to go to the bank, and if [he] needed any money, that it was there for [him]." This testimony is in direct conflict with Hobock's testimony and the undisputed fact that Hobock never actually had established the Defendant as one authorized to make withdrawals. The Defendant further testified, also in conflict with Hobock's testimony, that Hobock never had discussed with him the fact that he was the beneficiary of the account. Furthermore, the Defendant admitted that Hobock had not given him any withdrawal slips or the necessary account information to make withdrawals, that he never had made a deposit into the account, and that he never had paid any taxes on the account. Indeed, since the account was opened in 1995, the Defendant had not made a single withdrawal before the two transactions in question, when he completely emptied it.

Questions concerning the credibility of witnesses are resolved by the trier of fact. See Bland, 958 S.W.2d at 659. Here, the testimony of Hobock and the Defendant are in conflict, and that conflict is resolved in favor of the State. See Harris, 839 S.W.2d at 75. The jury clearly chose to accredit some or all of Hobock's testimony and to discredit that of the Defendant. We may not reassess the credibility of either witness. See State v. McCloud, 310 S.W.3d 851, 867 (Tenn. Crim. App. 2009). The evidence presented at trial clearly was sufficient to lead a reasonable trier of fact to conclude that the Defendant withdrew the bank funds with the knowledge that he was merely a beneficiary on the account and did not have Hobock's effective consent to do so. Therefore, the Defendant is entitled to no relief on this issue.

## Home Federal Bank's Effective Consent

Second, the Defendant asserts that "the Bank's effective consent to [the Defendant's] withdrawal negates the State's claim that [the Defendant] withdrew funds from trust account without the effective consent of Ms. Hobock." According to the Defendant, Home Federal Bank "gave consent to [the Defendant] to withdraw the bank account proceeds, and the Bank's consent suffices to make [the Defendant's] withdrawals lawful."

Under Tennessee Code Annotated section 39-11-106(a)(9), "'Effective consent' means assent in fact, whether express or apparent, including assent by one legally authorized to act for another." However, consent is not effective when:

> (A) Induced by deception or coercion;
>
> (B) Given by a person the defendant knows is not authorized to act as an agent;
>
> (C) Given by a person who, by reason of youth, mental disease or defect, or intoxication, is known by the defendant to be unable to make reasonable decisions regarding the subject matter; or
>
> (D) Given solely to detect the commission of an offense.

Tenn. Code Ann. § 39-11-106(a)(9). Likewise, "deception" occurs when one knowingly:

> (i) creates or reinforces a false impression by words or conduct, including false impressions of fact, law, value or intention or other state of mind that the person does not believe to be true;
>
> (ii) Prevents another from acquiring information which would likely affect the other's judgment in the transaction;
>
> (iii) Fails to correct a false impression of law or fact the person knows to be false and:
>
> (a) The person created; or
>
> (b) Knows is likely to influence another

(iv) Fails to disclose a lien, security interest, adverse claim or other legal impediment to the enjoyment of the property, whether the impediment is or is not valid, or is or is not a matter of public record;

(v) Employs any other scheme to defraud;

Tenn. Code Ann. § 39-11-106(a)(6)(i)-(v).

Indeed, "deception" under our criminal code does not refer exclusively to affirmative acts. Rather, deception "may involve a passive act, as when a person fails to correct a false impression of law or fact." State v. Marcus Pope, No. W2012-00033-SC-R11-CD, 2013 WL 6869850, at *6 (Tenn. Nov. 6, 2013). As previously discussed herein, the jury chose to accredit the testimony of the prosecution witnesses and concluded that the Defendant had knowledge that he did not have Hobock's effective consent to withdraw funds from the account. Therefore, when the Defendant entered Home Federal Bank to attempt to withdraw funds from an account he knew he was not authorized to withdraw from, he both knowingly "reinforced a false impression" that he was an owner of the account and "[f]ail[ed] to correct a false impression of law or fact that [he] knew to be false" and knew was "likely to influence another." See Tenn. Code Ann. § 39-11-106(a)(6)(A)(i), (iii).

It is uncontroverted that Home Federal's clerical error made it easier for the Defendant to withdraw funds from Hobock's account which did not belong to him. The Defendant took advantage of that error. However, the ease of the Defendant's deception did not render it lawful. The evidence was sufficient to support the jury's conclusion that the Defendant withdrew funds from Home Federal Bank with the knowledge that he was not authorized to do so. Therefore, the Defendant's withdrawals constituted deception on the part of the Defendant and negated any "effective consent" by Home Federal Bank. See State v. Teretha Ann Rogers, No. 01C01-9309-CC-00314, 1994 WL 585416, at *3 (Tenn. Crim. App. Oct. 20, 1994) ("[D]eception on the part of the defendant precluded any 'effective consent' on the part of the bank."). Accordingly, the Defendant is entitled to no relief on this issue.

*Sentencing*

The Defendant asserts that the trial court erred in ordering restitution because it "assigned the [Defendant] a payment schedule extending beyond the statutory maximum term of probation supervision that could have been imposed" and because the trial court "failed to consider [the Defendant's] limited financial resources when setting the amount of restitution."

When the record establishes that the trial court imposed a sentence within the appropriate range that reflects a "proper application of the purposes and principles of our

-11-

Sentencing Act," this Court reviews the trial court's sentencing decision under an abuse of discretion standard with a presumption of reasonableness. State v. Bise, 380 S.W.3d 682, 707 (Tenn. 2012). Our supreme court recently held that the Bise standard of review "applies to all sentencing decisions." State v. Kiara Tashawn King, ___ S.W.3d___, ___, No. M2012-00236-SC-R11-CD, 2014 WL 1622210, at *6 (Tenn. April 23, 2014); see also State v. Caudle, 388 S.W.3d 273, 278-79 (Tenn. 2012) (extending the Bise standard of review to "questions related to probation or any other alternative sentence"). Thus, in reviewing a trial court's restitution order, the applicable standard of review is abuse of discretion with a presumption of reasonableness so long as the sentence "reflect[s] a decision based upon the purposes and principles of sentencing." Bise, 380 S.W.3d at 707; see also, State v. David Allan Bohanon, No. M2012-02366-CCA-R3CD, 2013 WL 5777254, at *5 (Tenn. Crim. App. Oct. 25, 2013) ("[T]he appropriate standard of review for restitution orders is the abuse of discretion standard with a presumption of reasonableness.").

"The purpose of restitution is not only to compensate the victim but also to punish and rehabilitate the guilty." State v. Johnson, 968 S.W.2d 883, 885 (Tenn Crim. App. 1997). Tennessee Code Annotated section 40-35-304 sets forth the procedure for imposing restitution as a condition of probation[2] and mandates that, "[i]n determining the amount and method of payment or other restitution, the court shall consider the financial resources and future ability of the defendant to pay or perform." Tenn. Code Ann. § 40-35-304(d) (2006). This consideration of the Defendant's ability to pay "is a judicial duty that the trial judge cannot delegate to another." State v. Donna Harvey, No. E2009-01945-CCA-R3-CD, 2010 WL 4527013, at *5 (Tenn. Crim. App. Nov. 9, 2010). The trial court may order the payment of restitution in installments; however, the Defendant "shall only be responsible for the payment of the restitution until the expiration of the sentence imposed by the court, and any payment or performance schedule established by the court shall not extend beyond the expiration date." Tenn. Code Ann. § 40-35-304(g)(2); see State v. Smith, 898 S.W.2d 742, 747 (Tenn. Crim.

---

[2] We note that, in cases where a defendant is convicted of theft of property, our criminal code mandates restitution and requires the jury to determine the specific value of the property stolen. Tenn. Code Ann. § 40-20-116(a) (2006) ("Whenever a felon is convicted of stealing or feloniously taking or receiving property, or defrauding another of property, the jury shall ascertain the value of the property . . . and the court shall, thereupon, order the restitution of the property."); see David Allan Bohanon, 2013 WL 5777254, at *5 ("Restitution is mandatory in all theft convictions."). Even where restitution is ordered under section 40-20-116(a), however, the procedural requirements of section 40-35-304 still apply. David Allan Bohanon, 2013 WL 5777254, at *5; State v. William Chandler Daniels, No. E2009-02172-CCA-R3-CD, 2010 WL 5343776, at *3 (Tenn. Crim. App. Dec. 23, 2010). In the instant case, we glean from the record that the jury made no determination as to the specific amount of the stolen property and that restitution was ordered as a condition of probation. However, even in theft cases, "the jury's failure to determine a specific value or amount of property stolen does not foreclose the imposition of restitution as a condition of probation, pursuant to Code section 40-35-304." State v. Patricia White & Craig White, No. W2003-00751-CCA-R3-CD, 2004 WL 2326708, at *23 (Tenn. Crim. App. Oct. 15, 2004).

-12-

App. 1994) ("The trial court must further set an amount of restitution that the appellant can reasonable pay within the time that he will be within the jurisdiction of the trial court."). There is no set formula for calculating restitution. Johnson, 968 S.W.2d at 886. The amount of restitution "must be based upon the victim's pecuniary loss," but it "does not have to equal or mirror the victim's precise pecuniary loss." Smith, 898 S.W.2d at 747. Rather, the trial court "must ascertain both the amount of the victim's loss and the amount which the defendant can reasonably be expected to pay." State v. Bottoms, 87 S.W.3d 95, 108 (Tenn. Crim. App. 2001).

Theft is a Class C felony "if the value of the property or services obtained is ten thousand dollars ($10,000) or more but less than sixty thousand dollars ($60,000)." See Tenn. Code Ann. § 39-14-105(a)(4). The trial judge sentenced the Defendant to four years, suspended to supervised probation, and ordered the Defendant to pay restitution in the amount of $42,815.93. In ordering restitution, the trial court stated:

> The minimum I'm going to require you to pay is $50 a month. If you can pay more, you should. If we need to revisit that restitution amount at the end of your probation, we can at that time, but I think it is appropriate to go ahead and order it in full at this point. All right? So make your best efforts, at least $50 a month.

The trial court made no other findings regarding the Defendant's financial resources or ability to pay. The presentence report, which was entered into evidence at the sentencing hearing, showed that the Defendant was unemployed at the time of the hearing and was receiving disability payments in the amount of $838.90 per month.

The record does not reflect that the trial court considered the Defendant's financial resources or future ability to pay when it set the total amount of restitution at the full $42,815.93. Given the Defendant's income, it is not likely that he reasonably could be expected to pay the full amount of restitution during the term of his probation. See Bottoms, 87 S.W.3d at 108. Furthermore, in setting a minimum payment of $50 per month, the trial court established a payment schedule which would not have resulted in payment of the restitution amount in full by the end of the term. In doing so, the trial court created a situation in which the Defendant would not be in violation of the order of restitution if he made the minimum payments each month while simultaneously violating it by not completing the full amount ordered by the end of the term in which he is required to pay. See State v. Terence Alan Carder, No. W2009-01862-CCA-R3-CD, 2010 WL 5272938, at *6 (Tenn. Crim. App. Dec. 10, 2010) (reversing the trial court's restitution order of a minimum of $100 per month because it would not, within the maximum period of payment, have satisfied the full $80,000 of total restitution ordered). Instead, "the proper procedure is to set the amount of restitution

as the amount which the defendant is determined to be able to pay." Id. Indeed, "[a]n order of restitution which obviously cannot be fulfilled serves no purpose for the appellant or the victim." Johnson, 968 S.W.2d at 886. Therefore, we must vacate the trial court's restitution order and remand the case to the trial court for a new restitution hearing, at which the trial court shall consider the Defendant's current financial resources and future ability to pay and set a restitution amount and payment schedule which can be completed during the term of the Defendant's probation.[3]

## CONCLUSION

After a thorough review of the record and the applicable law, we affirm the Defendant's conviction. We vacate the trial court's order of restitution, however, and remand this matter for a new hearing as to the amount and manner of restitution.

_____

JEFFREY S. BIVINS, JUDGE

---

[3] We also note that, for any amount of the total value of the property stolen not included in the amount of restitution, the trial court may establish the deficiency amount, which is subject to collection by execution. See Tenn. Code Ann. § 40-20-116(a); State v. Ardie Mae Culbreth, No. M2007-01157-CCA-R3-CD, 2008 WL 2796467, at *2 (Tenn. Crim. App. July 21, 2008). Furthermore, any portion of the amount of restitution actually ordered that remains unpaid at the end of the Defendant's term of probation can be converted to a civil judgment. See Tenn. Code Ann. § 40-35-304(h); Bottoms, 87 S.W.3d at 108.

-14-