# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs November 12, 2014

## STATE OF TENNESSEE v. JASON LEE FISHER

**Appeal from the Circuit Court for Marshall County**
**No. 2013-CR-54    Lee Russell, Judge**

**No. M2014-00615-CCA-R3-CD - Filed December 22, 2014**

The Defendant, Jason Lee Fisher, was convicted by a Marshall County Circuit Court jury of felony escape, a Class E felony. *See* T.C.A. § 39-16-605(a) (2014). The trial court sentenced the Defendant to six years' confinement at 60% service to be served consecutively to a previous sentence. On appeal, the Defendant contends that the evidence is insufficient to support his conviction and that the trial court erred by denying his motion for a judgment of acquittal. We affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ROBERT H. MONTGOMERY, JR., J., delivered the opinion of the court, in which NORMA MCGEE OGLE and CAMILLE R. MCMULLEN, JJ., joined.

Michael Auffinger (at trial and on appeal) and Robert Dalton (at trial), Lewisburg, Tennessee, for the appellant, Jason Lee Fisher.

Robert E. Cooper, Jr., Attorney General and Reporter; Meredith DeVault, Senior Counsel; Charles Frank Crawford, Jr., District Attorney General; and Weakley E. Barnard, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

This case relates to the Defendant's actions while in the custody of a correction officer. At the trial, Terrance Howard testified that on December 19, 2012, the date of the incident, he was employed as a Marshall County Sheriff's Department correction officer and that he primarily worked at the county jail and occasionally transported prisoners to court.

Officer Howard testified that on the incident date, he was working at the Marshall County courthouse when he saw the Defendant, who was in court for a matter. When the

Defendant's proceeding ended, a deputy asked Officer Howard to return the Defendant to the jail. Officer Howard's uniform consisted of a black, polo-style shirt with the jail emblem on the left side, khaki cargo pants, and black boots. He agreed he was easily identifiable as a correction officer.

Officer Howard testified that when transporting prisoners to court, they were each restrained by leg shackles, handcuffs, and a belly chain that wrapped around their waists and connected to the handcuffs. As Officer Howard and the Defendant left the courtroom, the Defendant was restrained by a belly chain, handcuffs, and ankle shackles. As they walked toward a transport car in the courthouse parking lot, Officer Howard realized he no longer heard the sound of the Defendant's chains. Officer Howard turned and saw the Defendant bent over but could not tell what he was doing. He saw the Defendant open one shackle, take it off, and place it on his other leg.

Officer Howard testified that he heard the Defendant say that Officer Howard knew "what time it [was]" and that the Defendant then fled on foot toward the side of the courthouse. He chased the Defendant, and at the edge of the parking lot and the courthouse lawn, Officer Howard caught the Defendant and dragged him to the ground. They wrestled as the Defendant tried to get away. The Defendant told Officer Howard to let him go, and Officer Howard sprayed the Defendant with pepper spray to regain control.

Officer Howard testified that the sheriff's department never took prisoners to or from court without shackles and a belly chain on each prisoner. He did not inspect the Defendant's restraints after the incident to determine if the restraints had been tampered with or were defective.

Officer Howard testified that removing a shackle was not easy. By the time he caught up with the Defendant, one of his shackles was still on while the other was dangling. The Defendant's handcuffs were also dangling and free of his hands. His belly chain, however, was still attached.

Officer Howard testified that before he and the Defendant left the courtroom and walked down the inside courthouse stairs, Officer Howard did not lock the Defendant's restraints or confirm the restraints were properly fastened. The Defendant's restraints contained five locks, and his handcuffs and belly chain were connected with a lock on the back of the chain. Officer Howard had previously found restraints in the jail that would not latch properly.

Officer Howard testified that it was about sixty feet from the point where the Defendant bent over, took off a shackle, and began running and where Officer Howard

-2-

caught up with the Defendant. He said that there was a period of time when the Defendant left Officer Howard's care, control, and custody.

Lewisburg Police Sergeant David Henley testified that on the incident date, he was at the corner of the parking lot when he noticed the Defendant, who was wearing jail stripes, run across the grassy area beside the courthouse. He said normally people in stripes at the courthouse were in custody. He also saw Officer Howard pursuing the Defendant.

Sergeant Henley testified that Officer Howard and the Defendant disappeared behind some cars in the parking lot. When Sergeant Henley reached them, he found them wrestling on the ground. He grabbed the Defendant and placed him against a car with his hand behind his back until Officer Howard could handcuff the Defendant.

Marshall County Jail Administrator Sabrina Patterson testified that Officer Howard was employed as a correction officer and that the Defendant was incarcerated in the jail on the incident date. The Defendant did not have permission to leave the sheriff department's care, custody, or control on that date.

Ms. Patterson testified that when prisoners had court proceedings, they were transported back and forth between the jail and court. During the process, prisoners were not booked in or out of the jail and were treated as being at the jail. She said the jail was a penal institution. The parties stipulated that on the incident date, the Defendant was housed in the Marshall County jail on felony charges.

Upon this evidence, the jury found the Defendant guilty of felony escape. This appeal followed.

The Defendant contends that the evidence is insufficient to support his conviction and that the trial court erred by denying his motion for a judgment of acquittal. The standard of review for a trial court's denial of a motion for a judgment of acquittal is the "same standard that applies on appeal in determining the sufficiency of the evidence[.]" *State v. Little*, 402 S.W.3d 202, 211 (Tenn. 2013). In determining the sufficiency of the evidence, the standard of review is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *see State v. Vasques*, 221 S.W.3d 514, 521 (Tenn. 2007). The State is "afforded the strongest legitimate view of the evidence and all reasonable inferences" from that evidence. *Vasques*, 221 S.W.3d at 521. The appellate courts do not "reweigh or reevaluate the evidence," and questions regarding "the credibility of witnesses [and] the weight and value to be given to

the evidence . . . are resolved by the trier of fact." *State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997)*; see State v. Sheffield*, 676 S.W.2d 542, 547 (Tenn. 1984).

"'A crime may be established by direct evidence, circumstantial evidence, or a combination of the two.'" *State v. Sutton*, 166 S.W.3d 686, 691 (Tenn. 2005) (quoting *State v. Hall*, 976 S.W.2d 121, 140 (Tenn. 1998)). "The standard of review 'is the same whether the conviction is based upon direct or circumstantial evidence.'" *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011) (quoting *State v. Hanson*, 279 S.W.3d 265, 275 (Tenn. 2009)).

An escape occurs when "any lawfully confined person arrested for, charged with, or found guilty of a civil or criminal offense . . . escape[s] from a penal institution[.]" T.C.A. § 39-16-605(a). Escape, in relevant part, is an "unauthorized departure from custody[.]" *Id.* § 39-16-601(3) (2014). Custody, in relevant part, means "under restraint by a public servant pursuant to an order of a court." *Id.* § 39-16-601(2). The Defendant only argues that he did not escape from a penal institution. He argues that the "unenclosed open-air area" of the courthouse parking lot where he fled from Officer Howard is not a penal institution.

A penal institution is "any institution or facility used to house or detain a person: (A) Convicted of a crime; (B) Adjudicated delinquent by a juvenile court; (C) Who is in direct or indirect custody after a lawful arrest; or (D) When such institution or facility is a court-operated long-term residential substance abuse facility." *Id.* § 39-16-601(4) (2014). The Defendant cites *State v. Walls*, 62 S.W.3d 119 (Tenn. 2001), to support his argument that the courthouse parking lot is not a penal institution.

In *Walls*, the Tennessee Supreme Court held that the defendant's flight from the rear of a patrol car did not constitute escape from a penal institution. *Id.* at 120. The court reasoned that "including a patrol car in the definition of 'penal institution' unnecessarily expands the offense of escape to circumstances that the legislature intended to address under other statutory offenses." *Id.* at 121-23. The Defendant argues that if the rear of a patrol car is not a penal institution, then neither is the open area of a courthouse parking lot. Unlike the Defendant in the present case, the defendant in *Walls* had neither been convicted of a crime nor incarcerated before fleeing from the arresting police officers. Thus, *Walls* is not applicable.

In this case, the Defendant was housed in the Marshall County jail for a felony charge and was under restraint at the time he fled without authorization from Officer Howard. Although the incident occurred outside the walls of the jail while the Defendant was being returned to the jail from a court appearance, he was still in the custody of a penal institution. As this court has previously held,

-4-

[O]ne escapes when he leaves the limits of his custody without authorization. [F]or as long as he was in custody, the walls of the 'penal institution' continued to enclose him, so that an unauthorized departure from that custody is as much an escape from a 'penal institution' as if [he] were to have climbed over the prison wall or tunneled under it.

*State v. David Wayne Bodenhammer*, No. 1183, 1991 WL 73964, at *1 (Tenn. Crim. App. May 8, 1991); *see also Burns v. State*, 584 S.W.2d 827, 829 (Tenn. Crim. App. 1979) (holding that custody extended to the state technical campus where the defendant studied, attended classes, and was unguarded during his visits to the campus); *State v. Marty Miller*, No. 03C01-9602-CC-00056, 1997 WL 90638, at *2 (Tenn. Crim. App. March 4, 1997) (holding that the defendant, who was transported from jail to court for a hearing, was in custody and committed the offense of escape when he fled from the courthouse bathroom).

It is clear from the case law that "[t]he locus of [a defendant's] incarceration is not a critical inquiry in establishing the crime of escape. [T]he offense is the escape from custody of the confining authority, so that the place of confinement is not, in fact, a relevant inquiry." *Ray v. State*, 577 S.W.2d 681, 683 (Tenn. Crim. App. 1978).

We conclude that even though the Defendant fled from Officer Howard's custody in the parking lot, he was still in the custody of a penal institution. Therefore, the evidence is sufficient to support the Defendant's conviction, and the Defendant is not entitled to relief.

Based on the foregoing and the record as a whole, we affirm the judgment of the trial court.

_____
ROBERT H. MONTGOMERY, JR., JUDGE